**2017-1215, 2017-1216**

———————————

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————

Milwaukee Electric Tool Corporation, Techtronic Industries Co. Ltd., Techtronic Industries North America, Inc. And One World Technologies, Inc.,

Appellant,

v.

Irwin Industrial Tool Company,

Appellee.

———————————————————————————————

## ON APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

## CORRECTED BRIEF OF APPELLEE
## IRWIN INDUSTRIAL TOOL COMPANY

John W. Harbin
Gregory J. Carlin
Mary Katherine Bates
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404)645-7707
*Counsel for Appellee Irwin Industrial Tool Company*

June 12, 2017

## <u>CERTIFICATE OF INTEREST</u>

Pursuant to Federal Circuit Rule 47.4, counsel for Appellee Irwin Industrial

Tool Company certifies the following:

1.      The full name of every party represented by me is:  **Irwin Industrial Tool**

**Company**

2.      The name of the real party in interest (if the party named in the caption is not

the real party in interest) represented by me is:  **Irwin Industrial Tool Company**

3.      All parent corporations and any publicly held companies that own 10 percent

or more of the stock of the party or amicus curiae represented by me are:  **Stanley**

**Black & Decker, Inc.**

4.      The names of all law firms and the partners or associates that appeared for

the party or amicus now represented by me in the trial court or agency or are

expected to appear in this court are:  **MEUNIER CARLIN & CURFMAN LLC;**

**John W. Harbin; Gregory J. Carlin; Mary Katherine Bates; Jessica Keesee**


Dated: June 12, 2017                    /s/ John W. Harbin
                                        John W. Harbin
                                        *Attorney for Appellee*
                                        *Irwin Industrial Tool Company*

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ................................................................. ii

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................ vi

STATEMENT OF RELATED CASES ..................................................... x

I.   STATEMENT OF THE ISSUES ...................................................... 1

II.  SUMMARY OF THE ARGUMENT ................................................. 2

III. ARGUMENT ............................................................................... 5

   A.   Standards of Review ............................................................. 7

   B.   The Board analyzed the anticipation argument presented by Milwaukee in
   its Petition, which was founded on the claim construction Milwaukee now
   criticizes; Milwaukee has no ground to argue now its new theory of anticipation
   based on a different claim construction. ........................................... 8

      1.   The anticipation argument in Milwaukee's Petition presupposed that "hole
      cutter" is a limitation of the challenged claims, which imparts a "drive structure
      requirement;" the Board evaluated Milwaukee's anticipation argument as
      presented. ................................................................................. 9

      2.   Milwaukee's alternative argument—that the patent claims do not include a
      "drive structure requirement"—was raised for the first time at the oral hearing,
      and thus was properly disregarded by the Board and is irrelevant to this appeal.
         14

      3.   The Board's rejection of Milwaukee's theory of anticipation based on
      Redford is supported by substantial evidence. ................................. 17

   a.   When the Redford cleaning flange is operated as a hole cutter using the
   Redford body 20 and pin 54 as the drive mechanism, other claim limitations cannot
   be met. ...................................................................................... 17

   b.   The Redford cleaning flange does not have, and Redford does not teach that
   the flange should be modified to have, a structure to connect it to an alternative
   drive mechanism. ......................................................................... 24

C.  Milwaukee's obviousness arguments based on Redford fail for the same reasons its anticipation argument fail and because Milwaukee failed to carry its burden to show a motivation..................................................................26

D.  There is no reversible error in the Board's ruling that the challenged claims are nonobvious over the combination of Redford and Starbuck based on the Board's failure to expressly state the level of ordinary skill in the art in its Final Written Decisions. ...........................................................................29

  1.  The Board determined that the challenged claims are nonobvious over the combination of Redford and Starbuck, without the aid of Mr. Novak's testimony.....................................................................................30

a.  Milwaukee failed to carry its burden to demonstrate that it would have been obvious to merge Redford's S-shaped channel 56 with Starbuck's slots 22 to arrive at Milwaukee's proposed modification; Mr. Novak merely concurred...................30

b.  Milwaukee failed to carry its burden to demonstrate that if Redford's S-shaped channel 56 were merged with Starbuck's slots 22, it would have been done in a way to preserve the alleged "third fulcrum" shown in Milwaukee's proposed modification; Mr. Novak again concurred................................................33

  2.  The Board's failure to expressly state the level of skill in the art does not mean the Board did not resolve the level of skill, and had the Board resolved the level of skill to be that espoused by Mr. Novak, that decision would have been supported by substantial evidence. ...........................................36

  3.  Milwaukee's attorney argument regarding what a person of ordinary skill would have thought of the Redford and Starbuck references is irrelevant. ......38

  E.  The Board's conclusions regarding both Milwaukee's 102 and 103 arguments should be affirmed for other reasons ................................................40

  1.  The Board's determination that Redford does not anticipate the challenged claims is supported by other evidence that the Redford cleaning flange does not meet the requirements of the challenged claims................................................40

a.  Redford does not disclose or suggest anything about creation of slugs or an aperture, fulcrums, or means for levering slugs......................................................41

b.  There is no indication in Redford that the channel would have sufficient strength or rigidity to function as a fulcrum point...................................................42

c.  Redford does not anticipate the claims because the nut driver prohibits the

alleged slot from receiving a lever..........................................................................46

2.   Even if this Court were to decide that the Board improperly resolved the level of ordinary skill at a level too low and that the Board would not have reached its same nonobvious conclusion without reliance on testimony based on that lower-level of skill, Board's ultimate finding of nonobviousness still should be affirmed. 47

a.   The Board's finding of nonobviousness regarding the combination of Redford and Starbuck is correct, even if Mr. Novak's testimony is disregarded..................49

b.   For the following additional reasons, all of which are supported by the record, even absent the testimony of Mr. Novak, the challenged claims are nonobvious over Redford in light of Starbuck. ..........................................................................52

3.   Secondary considerations also support the Board's conclusions of nonobviousness ..............................................................................................................58

IV. CONCLUSION.....................................................................................................61

CERTIFICATE OF COMPLIANCE......................................................................62

CERTIFICATE OF SERVICE...............................................................................63

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.,*
694 F.3d 1312 (Fed. Cir. 2012) ..................................................... 46

*ATD Corp. v. Lydall, Inc.,*
159 F.3d 534 (Fed. Cir. 1998) ....................................................... 45

*Brand v. Miller*,
487 F.3d 862 (Fed. Cir. 2007) ....................................................... 49

*Callaway Golf Co. v. Acushnet Co.,*
576 F.3d 1331 (Fed. Cir. 2009) ..................................................... 19

*Cheese Sys. Inc. v. Tetra Pak Cheese and Powder Sys., Inc.*,
725 F.3d 1341 (Fed. Cir. 2013) ............................................... 42, 45

*Consolidated Edison Co. v. NLRB,*
305 U.S. 197 (1938) ................................................................. 20, 42

*Cuozzo Speed Techs., LLC v. Lee,*
136 S. Ct. 2131 (2016) .................................................................... 8

*Daiichi Sankyo Co. v. Apotex, Inc.,*
501 F.3d 1254 (Fed. Cir. 2007) ..................................................... 52

*Datascope Corp. v. SMEC, Inc.,*
879 F.2d 820 (Fed. Cir. 1989) ....................................................... 55

*Dell Inc. v. Acceleron, LLC,*
818 F.3d 1293 (Fed. Cir. 2016) .............................................. 19, 24

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ..................................................... 72

*Dickinson v. Zurko,*
527 U.S. 150 (1999) ................................................................. 20, 42

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.,*
287 F.3d 1108 (Fed. Cir. 2002) ..................................................... 24

*Gemtron Corp. v. Saint-Gobain Corp.*,
    572 F.3d 1371 (Fed. Cir. 2009) .......................................... 29, 51, 54

*Glaxo Grp. Ltd. v. TorPharm, Inc.*,
    153 F.3d 1366 (Fed. Cir. 1998) ....................................................... 55

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
    849 F.3d 1034 (Fed. Cir. 2017) ....................................................... 64

*In re Am. Acad. of Sci. Tech Ctr.*,
    367 F.3d 1359 (Fed. Cir. 2004) ............................................... 42, 49

*In re Cuozzo Speed Techs., LLC*,
    793 F.3d 1268 (Fed. Cir. 2015), aff'd sub nom. .............................. 19

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
    676 F.3d 1063, (Fed. Cir. 2012) ................................................ 76-77

*In re Gartside*,
    203 F.3d 1305 (Fed. Cir. 2000) ............................................... 51, 64

*In re Gordon*,
    733 F.2d 900, 902 (Fed. Cir. 1984) ......................................... 73, 74

*In re ICON Health & Fitness, Inc.*,
    496 F.3d 1374 (Fed. Cir. 2007) ....................................................... 74

*In re Jolley*,
    308 F.3d 1317 (Fed. Cir. 2002) .......................................... 20, 44, 52

*In re Kahn*,
    441 F.3d 977 (Fed. Cir. 2006) ........................................... 20, 52-53

*In re Klein*,
    647 F.3d 1343 (Fed. Cir. 2011) ............................................... 19, 69

*In re Kubin*,
    561 F.3d 1351 (Fed. Cir. 2009) ............................................... 20, 51

*In re Magnum Oil Tools Int'l, Ltd.*,
    829 F.3d 1364 (Fed. Cir. 2016) ....................................................... 28

*In re Robertson*,
    169 F.3d 743, 745 (Fed. Cir. 1999) .................................... 57, 60, 75

*In re Schreiber,*
128 F.3d 1473 (Fed. Cir. 1997) ................................................. 24, 26

*In re Stencel,*
828 F.2d 751 (Fed. Cir. 1987) ......................................................... 26

*Innovention Toys, LLC v. MGA Entm't, Inc.,*
637 F.3d 1314 (Fed. Cir. 2011) ...................................................... 43

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.,*
821 F.3d 1359 (Fed. Cir. 2016) ..........................................21, 27, 28

*Kappos v. Hyatt,*
566 U.S. 431 (2012)........................................................................ 20

*KSR Int'l Co. v. Teleflex Inc.,*
550 U.S. 398 (2007)........................................................................ 53

*McGinley v. Franklin Sports, Inc.,*
262 F.3d 1339, 1351 (Fed. Cir. 2001) ........................................... 76

*Medichem, S.A. v. Rolabo, S.L.,*
437 F.3d 1157 (Fed. Cir. 2006) ...................................................... 20

*Merck & Cie v. Gnosis S.P.A.,*
808 F.3d 829 (Fed. Cir. 2015) cert. denied, ―― U.S. ――, 137 S. Ct. 297 (2016) ............................................................................................. 19

*Mintz v. Dietz & Watson,*
679 F.3d 1372, 1379 (Fed. Cir. 2012) ...................................... 68, 69

*Ortho-McNeil Pharma., Inc. v. Mylan Labs., Inc.,*
520 F.3d 1358 (Fed. Cir. 2008) ...................................................... 76

*Pac-Tec Inc. v. Amerace Corp.,*
903 F.2d 796 (Fed. Cir. 1990) ........................................................ 25

*Plas-Pak Indus. V. Sulzer Mixpac AG,*
600 F. App'x 755 (Fed. Cir. 2015) ................................................. 73

*Poly-America LP v. GSE Lining Tech. Inc.,*
383 F.3d 1303 (Fed. Cir. 2004) ...................................................... 26

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*

711 F.3d 1348, 1368 (Fed. Cir. 2013) ............................................ 76

*Rexnord Indus., LLC v. Kappos,*
705 F.3d 1347 (Fed. Cir. 2013) ........................................ 55, 56, 63

*SAS Institute, Inc. v. ComplementSoft, LLC,*
825 F.3d 1341 (Fed. Cir. 2016) ...................................... 21

*Typhoon Touch Techs., Inc. v. Dell, Inc.,*
659 F.3d 1376 (Fed. Cir. 2011) ...................................... 24

*Wasica Finance GmbH v. Continental Automotive Sys., Inc.*,
853 F.3d 1271 (Fed. Cir. 2017) ...................................... 21

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
231 F.3d 1339 (Fed. Cir. 2000) ...................................... 70

## STATUTES

5 U.S.C. § 554(b)(3) ........................................................ 22

35 U.S.C. § 103 .............................................................. 63

35 U.S.C. § 312(a)(3) ...................................................... 27

## RULES

37 C.F.R. § 42.23(b) .................................................. 21, 27

## OTHER AUTHORITIES

MPEP § 2114(I) ............................................................. 26

MPEP § 2145(I) ............................................................. 29

# <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from this proceeding has previously been before this or any other appellate court.

There is a district court case pending involving U.S. Patent Nos. 8,579,554 ("the '554 Patent") and 8,579,555 ("the '555 Patent") (collectively "the Patents"): *Irwin Industrial Tool Company D/B/A Lenox v. Milwaukee Electronic Tool Corporation,* Civil Action No. 3:15-CV-30005, in the United States District Court for the District of Massachusetts. That case may be affected by this Court's decision in the pending appeal.

# I.    STATEMENT OF THE ISSUES

1.    Is the Board's decision that Redford does not anticipate the challenged claims supported by sufficient evidence to affirm under the substantial evidence review standard where the Petitioner's argument for nonpatentability was that Redford's cleaning flange is a hole cutter, and to be a hole cutter it must be connectable to a drive mechanism, but (a) when the Redford flange is connected to the (purported) Redford drive mechanism, other required claim limitations cannot be met; (b) there is no evidence the Redford flange is connectable to a different drive mechanism; and (c) Redford does not teach modifying the flange to make it connectable?

2.    If the Board's anticipation decision does not survive substantial evidence review, is there sufficient evidence in the record to affirm the Board's decision under the right for any reason doctrine?

3.    Is the Board's decision that Redford does not render the challenged claims obvious supported by sufficient evidence to affirm under the substantial evidence review standard where the Petitioner's argument for nonpatentability was that Redford's cleaning flange is a hole cutter, and to be a hole cutter it must be connectable to a drive mechanism, but (a) when the Redford flange is connected to the (purported) Redford drive mechanism, other required claim limitations cannot be met; (b) there is no evidence the Redford flange is connectable to a different

drive mechanism; (c) Redford does not teach modifying the flange to make it connectable; and (d) Milwaukee did not establish that a person of ordinary skill in the art would be motivated to modify the Redford cleaning flange to make it connectable?

4.     If the Board's decision on obviousness in light of Redford alone does not survive substantial evidence review, is there sufficient evidence in the record to affirm the Board's decision under the right for any reason doctrine?

5.     Where, to reach its decision that the challenged patent claims are nonobvious over Redford in combination with Starbuck, the Board did not rely on the expert testimony that Milwaukee argues was based on an unreasonably low level of skill in the art, but merely cited that testimony as consistent with the Board's conclusions based on other record evidence, is there error warranting reversal?

6.     Even assuming the Board determined that the level of ordinary skill in the art was at a level too low, should the Board's conclusion that the claims are nonobvious over Redford in combination with Starbuck be affirmed under the right for any reason doctrine?

## II.  <u>SUMMARY OF THE ARGUMENT</u>

Milwaukee attempts to argue on appeal wholly new theories of unpatentability, using a claim construction antithetical to the one that it adopted in

its Petition. Milwaukee's first allusions to these new theories appeared at the oral hearing before the Board, and it seems Milwaukee has honed those theories now. But it is too late. The Board and Irwin addressed Milwaukee's arguments as they were presented and argued on the papers, and the law is clear that Milwaukee was required to present its theories with particularity in its Petition and could not at the hearing (or now on appeal) devise new ones.

Specifically, Milwaukee argues now that the Board concocted a limitation not present in the claims when it ruled that Milwaukee had not carried its burden on proving anticipation or obviousness over Redford—a limitation that it calls the "drive structure requirement." But that construction was Milwaukee's in the first instance. Recognizing that hole cutters must be connectable to a driving mechanism to cut holes and generate slugs, Milwaukee, in its Petition, laid out the following argument: that the challenged independent claims all teach a "hole cutter" and Redford's cleaning flange 60 is a "hole cutter," as evidenced by the fact that, *inter alia*, it is connectable to a separate drive mechanism. *E.g.*, Appx0103, Appx0106, Appx0159–0060, Appx0162. Milwaukee's theory necessarily presumed that the "hole cutter" preamble to the challenged claims is limiting and imparts the structural limitation of connectability to a separate drive mechanism, *i.e.*, a "drive structure requirement." Irwin did not contest that construction, and the Board accepted that construction when it evaluated Milwaukee's arguments.

Furthermore, despite Milwaukee's protestations now, that construction is consistent both with accepted claim construction principals, and with the remaining constructions propounded by Milwaukee and adopted by the Board.

Considering the Petition argument rightly before it, which was premised on "hole cutter" as a limiting element of the claims, the Board found, in an evidentiarily supported decision, that Milwaukee did not carry its burden to show anticipation by a preponderance of the evidence. The Board further concluded that it would not have been obvious to adapt Redford's cleaning flange for use as a hole saw. Though Milwaukee's argument on adaptation was threadbare, the Board gave Milwaukee the benefit of the doubt and considered its parallel arguments with regard to anticipation. Ultimately, the Board rightly concluded that Milwaukee "provide[d] insufficient reasoning as to why a person of ordinary skill in the art would have added a second, alternate drive structure to Redford's cleaning flange *60*," Appx0016, and thus did not carry its burden on the question of patentability. Additional record evidence, including ample secondary nonobvious considerations, support the Board's decision. Milwaukee's second argument, that the Board improperly failed to assess the level of skill in the art and/or assessed the level of skill as being too low by its reliance on Mr. Novak's testimony likewise ignores the case record.

Furthermore, even assuming the Board did determine that the level of ordinary skill in the art is the one espoused by Mr. Novak, the record provides ample evidence that Mr. Novak's standard is appropriate. Thus, as a finding of fact subject to substantial evidence review, the Board's reliance on Mr. Novak's standard cannot be overturned. Lastly, even if Milwaukee were to somehow overcome these hurdles, the record is replete with additional evidence that the claims are nonobvious over the combination of Redford and Starbuck, and the Board's ultimate conclusion could be affirmed pursuant to the "right for any reason" doctrine.

For all of these reasons, Irwin respectfully submits that the Board's decisions should be affirmed.

## III.  <u>ARGUMENT</u>

As explained more fully below, the Board's Decision must be sustained for at least the following reasons:

- the Board's anticipation decision and the facts underlying its obviousness decisions are supported by substantial evidence;

- the Board did not read into the claims limitations not there, but rather evaluated the Petitioner's arguments as-presented, which presumed that the preamble to the independent claims was limiting and included a "drive structure requirement" (as defined in Appellant's Brief) and

appreciated that the claims require, through the axially elongated aperture, fulcrums and means for facilitating levering of slugs, the hole cutter be able to cut holes and generate slugs;

- Milwaukee's new theories of anticipation and obviousness—based on new claim constructions first propounded during the Board's oral hearing—were rightly disregarded by the Board;

- the lack of an express statement in the Board's Final Written Decisions defining the standard of ordinary skill in the art was harmless, as, contrary to Milwaukee's assertions, the Board's decision that the claims are nonobvious in light of Redford and Starbuck was based on the cited art and Milwaukee's expert's testimony, not on the testimony of the expert that Milwaukee now challenges as having asserted a lower-than-appropriate standard of skill;

- even if the Board arguably relied upon this expert's testimony, the Board's decision to rely on his testimony inherently would mean the Board decided that the skill in the art he espoused was the appropriate level, and that factual decision is supported by ample record evidence, so it satisfies this Court's substantial evidence review standard.

- the record is replete with additional reasons why Milwaukee's cited art, Redford—alone, or in combination—does not anticipate or render

nonobvious the challenged claims. For these reasons, as well, the Board's final decisions should be affirmed.

### A. Standards of Review

This Court reviews the Board's legal conclusions, including claim construction and the Board's ultimate obviousness decision, *de novo*. *In re Cuozzo Speed Techs.*, LLC, 793 F.3d 1268, 1280 (Fed. Cir. 2015), *aff'd sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016); *In re Klein*, 647 F.3d 1343, 1347 (Fed. Cir. 2011). An anticipation determination and the factual findings underlying an obviousness determination are reviewed for substantial evidence. *See Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1298 (Fed. Cir. 2016); *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 833 (Fed. Cir. 2015) (concluding PTAB's conclusion that contested claims of the patent-in-suit were invalid as obvious was supported by substantial evidence), *cert. denied*, ⸺ U.S. ⸺, 137 S. Ct. 297 (2016); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1339 (Fed. Cir. 2009). Factual underpinnings of an obviousness decision include "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art at the time the invention was made; and (4) objective evidence of nonobviousness, if any." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009), as well as whether a person of ordinary skill in the art would

be motivated to combine the cited references or have a reasonable expectation of success. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164-65 (Fed. Cir. 2006).

Substantial evidence review is a deferential standard, *Kappos v. Hyatt*, 566 U.S. 431, 436 (2012), "requiring a court to ask whether a 'reasonable mind might accept' a particular evidentiary record as 'adequate to support a conclusion.'" *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also In re Kahn*, 441 F.3d 977, 985 (Fed. Cir. 2006). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," *In re Kahn*, 441 F.3d at 985, and generally is less stringent than "clearly erroneous" review of district courts' findings of fact, *Dickinson*, 527 U.S. at 153. Furthermore, "[i]f the evidence in [the] record will support several reasonable but contradictory conclusions, [this Court] will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

**B. The Board analyzed the anticipation argument presented by Milwaukee in its Petition, which was founded on the claim construction Milwaukee now criticizes; Milwaukee has no ground to argue now its new theory of anticipation based on a different claim construction.**

Milwaukee's anticipation argument was founded on its sole reference, Redford, teaching that its cleaning flange 60 is a "hole cutter" connectable to a

drive structure; in an evidentiarily supported decision, the Board found that the Redford cleaning flange 60 is not a hole cutter except when coupled with the body 20 and joining pin 54 described in Redford, and then other claim limitations cannot be met, and thus it does not anticipate.

> **1. The anticipation argument in Milwaukee's Petition presupposed that "hole cutter" is a limitation of the challenged claims, which imparts a "drive structure requirement;" the Board evaluated Milwaukee's anticipation argument as presented.**

It was incumbent upon Milwaukee to devise and state in its Petition all of its grounds for anticipation. *E.g.*, 37 C.F.R. § 42.23(b); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016). It was not free to devise new theories later based on new constructions. *Wasica Finance GmbH v. Continental Automotive Sys., Inc.*, 853 F.3d 1271, 1286-87 (Fed. Cir. 2017) (finding that new theories not contained in the original petition are "foreclosed by statute, [Federal Circuit] precedent, and Board guidelines"); *SAS Institute, Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1351 (Fed. Cir. 2016) (PTAB changing its claim construction between IPR institution decision and final decision deprived the parties of their right to be timely informed of the matters of fact and law asserted as required by the Administrative Procedure Act, 5 U.S.C. § 554(b)(3)). In its Petition, Milwaukee argued that the Redford cleaning flange 60 anticipates the challenged claims because it is a "hole saw" that reads on the "hole cutter"

preamble of the claims. Appx0103 (554  16), Appx0159-0160 (555  16-17) (claim chart identifying the Redford "cleaning flange 60" that 'is essentially a hole saw'" as reading on the independent claims' preamble, "A hole cutter, comprising"). Milwaukee went on to say that the Redford cleaning flange is a hole saw because, *inter alia*, it is "connectable to a … drive structure," and provided two theories of connectivity—one using Redford's body 20 and pin 54, and another using a different drive mechanism. Appx0106, Appx0162. In other words, Milwaukee's Petition unequivocally founded its anticipation argument on Redford's cleaning flange 60 being operable as a hole saw *because* it can be connected to a drive mechanism—*i.e.*, because it has a "drive structure" (as defined in Milwaukee's Appeal Brief).

Specifically, the Petition argued that the Redford cleaning flange anticipates because:

> Once removed from the nut driver 40, it would have been apparent to a person of ordinary skill in the art that the cleaning flange 60 is connectable to a different drive structure for use as a conventional hole saw. Ex. 1002, ¶11. For example, a hole saw arbor could have been threaded or otherwise attached to the stem extending upward from the cleaning flange 60 (i.e., the structure that received the body 20). *Id.* Alternatively, the cleaning flange 60 could have been attached to and driven by the same body 20 and pin 54 as before, but without the nut driver 40.

*Id.*

Inherent in Milwaukee's anticipation argument was that the cleaning flange must be operable as a hole saw in order to anticipate the challenged claims, which all recite a "hole cutter" and require generation of slugs needing levering using an axially elongated aperture, fulcrums and/or means. *See* Appx0068-0069 (claims 1 & 24); Appx0083 ('claims 1, 22). Milwaukee's argument thus presumed that the term "hole cutter" in the preamble to the independent claims of both the '554 and '555 patents is limiting and requires connection to a driving mechanism. Appx0106, Appx0113-0114, Appx0162, Appx0169-0170. That construction was not challenged by Irwin or the Board.[1]

The Board did not, as Milwaukee argues now, "import into the challenged claims a drive structure requirement." Rather, the Board took Milwaukee's argument, which was based on a reasonable reading of the claims' limitations, *see* discussion *infra*, and evaluated the evidence in support of the Petitioner's theory. Milwaukee's arguments that the Board's decision should be reversed because the Board improperly imported a "drive structure requirement" are, thus, unavailing. The Board simply took the Petitioner's argument as it was offered—presuming a limiting construction on the "hole cutter" preamble of the challenged claims and

---

[1] In the Patent Owner Response, Irwin agreed that the hole cutter disclosed in the claims required that cleaning flange 60 be able to couple with a driving structure. *E.g.*, Appx0290, Appx0355-0356 (P.O. Resp. at 25).

recognizing that a slug has to be generated to meet the axially elongated aperture, fulcrums and/or means limitations.

For the same reason, the cases recited by the Board are on point (*contra* Appellant Br. at 25); in those cases, like here, a feature of the claimed apparatus was not found in the purportedly anticipating prior part. *See* Appx0012, Appx0037; *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1298-99 (Fed. Cir. 2016); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1379-81 (Fed. Cir. 2011); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1111, 1117-18 (Fed. Cir. 2002); *see also In re Schreiber,* 128 F.3d 1473, 147 (Fed. Cir. 1997) (anticipation rejection affirmed based on Board's factual finding that the reference dispenser (a spout disclosed as useful for purposes such as dispensing oil from an oil can) would be capable of dispensing popcorn in the manner set forth in appellant's claim 1 (a dispensing top for dispensing popcorn in a specified manner) and cases cited therein).

The Board here did just as those cases instruct—and what Milwaukee's Petition asked the Board to do; the Board evaluated Redford for features of the claimed apparatus or for teachings to modify or adapt Redford to make it "capable of being adapted or modified to operate in a manner that would anticipate the claims." Appx0012, Appx0037. In other words, the Board rightly evaluated Redford for the presence of a "hole cutter" for generation of slugs for levering or

teachings that the Redford cleaning flange 60 could be modified or adapted to be a hole cutter for generation of slugs for levering as required for every challenged claim. Appx0010-0018 (*Id.* at 10-18), Appx0035-0043 (*Id.* at 10-18). There is no error in the Board having done so.

Furthermore, while claim construction is at not at issue in this appeal because all parties and the Board accepted that "hole cutter," axially elongated aperture, and fulcrums or means impart a "drive structure limitation," that construction is consistent with accepted claim construction principles. *See Pac-Tec Inc. v. Amerace Corp.,* 903 F.2d 796, 801 (Fed. Cir. 1990) (determining that preamble language that constitutes a structural limitation is part of the claimed invention); *In re Stencel,* 828 F.2d 751, 754 (Fed. Cir. 1987) (where claim was directed to a driver for setting a joint of a threaded collar and the body of the claim did not directly include the structure of the collar as part of the claimed article, the court found that the collar structure recited in the preamble did limit the structure of the driver). "Features of an apparatus may be recited either structurally or functionally." MPEP § 2114(I) (citing *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997)). A review of the entirety of the patent reveals that the preamble language relating to "hole cutter," as well as the "axially elongated aperture" and "fulcrums" or "means" in the body of the claims, do not state a purpose or an intended use of the invention, but rather discloses a fundamental characteristic of

13

the claimed invention – cutting of holes and generation of slugs for levering – that is properly construed as a limitation of the claim. *See Poly-America LP v. GSE Lining Tech. Inc.,* 383 F.3d 1303, 1310 (Fed. Cir. 2004) (finding same with regard to term "blown-film"). Milwaukee's attempts to say otherwise by cherry-picking phrases from the patents' specifications are unavailing and inconsistent with its own Petition arguments.

>    **2.    Milwaukee's alternative argument—that the patent claims do not include a "drive structure requirement"—was raised for the first time at the oral hearing, and thus was properly disregarded by the Board and is irrelevant to this appeal.**

At the oral hearing Milwaukee propound a new theory of anticipation:  that the claims' preamble "hole cutter" term is not limiting such that only structures that operate as hole cutters anticipate, and thus Redford anticipates because connectivity to a drive structure mechanism is not necessary. Appx0584-0587 (at 16:15-19:21).

Milwaukee's new argument is incorrect. And even if this wholly new argument, based on a new theory of anticipation and raised for the first time at the oral hearing, were correct, it was appropriately disregarded by the Board. "All arguments for the relief requested in a motion must be made in the motion." 37 C.F.R. § 42.23(b); *see also* 35 U.S.C. § 312(a)(3) (stating petition must identify "in writing and with particularity" "the grounds on which the challenge to each claim is based."). Milwaukee "chose which grounds of invalidity to assert in its petition

and it chose not to assert this new one." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016). Accordingly, Milwaukee's *inter partes review* challenge to the patents was limited to the anticipation theory that it laid out in its Petition, for, "unlike district court litigation—where parties have greater freedom to revise and develop their arguments over time and in response to newly discovered material—the expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute." *Id.*

The Board justifiably spent significant time during the oral hearing asking Milwaukee's counsel to clarify its new and contradictory argument. Appx0581-0582, Appx0584-0587 (at 13:5-14:2, 16:15-19:21). Of course, it could not be reconciled, as evidenced by Judge Cocks's apt question, "Is a hole saw or a hole cutter still a hole cutter if it is not operable as a hole cutter?" Appx0586 (at 18:19-20).[2]

Even had Milwaukee been forthcoming about its argument being a new one rather than trying to shoehorn it into its earlier theory, the Board was not free to

---

[2] During the oral hearing, and to some degree again in its appeal briefing, Milwaukee conflates the question of whether the contested claims and the Redford cleaning flange encompass a drive mechanism, such as a drill, which is attached to a saw for purposes of operating it to cut holes, with whether the claims and the Redford cleaning flange encompass a structure that allows for connectivity to a drive mechanism. The challenged patent claims require that the hole cutter have structure that makes it <u>connectable</u> to a drive mechanism; the claims do not encompass a drive mechanism (such as a drill).

consider it. *Intelligent Bio-Sys.*, 821 F.3d at 1369 ("[T]he expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute."); *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016) (the Board's "authority is not so broad that it allows the PTO to raise, address, and decide unpatentability theories never presented by the petitioner and not supported by record evidence"); *id.* at 1380 ("[T]he petitioner … bears the burden of proof in IPRs."). The argument propounded in the Petition and by Milwaukee's expert was that the Redford cleaning flange 60 anticipates because it is a hole saw and it is a hole saw because it is connectable to a drive mechanism. (*See supra.*) Subsequent attorney argument to the contrary, unsupported by evidence, Appx0586 (at 18:13-17), could not be the foundation of a valid Board decision, *see, e.g.*, *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("[U]nsworn attorney argument ... is not evidence and cannot rebut ... other admitted evidence ...."). *See also* MPEP § 2145(I) ("Attorney argument is not evidence unless it is an admission, in which case, an examiner may use the admission in making a rejection.").

In its Final Written Decisions, therefore, the Board correctly analyzed Milwaukee's original anticipation argument, as outlined above. Likewise, attorney argument cannot now be used by Milwaukee to contradict its own prior arguments and evidence. *Id.*

16

3.    **The Board's rejection of Milwaukee's theory of anticipation based on Redford is supported by substantial evidence.**

The Petition posited that the cleaning flange 60 would be usable "as a conventional hole saw" if "connectable to a … drive structure," Appx0106 (554 19), Appx0162 (555  19), and that either Redford body 20 and pin 54 could be used as a driving mechanism, or an alternative drive structure could be attached to the cleaning flange. For example, a hole saw arbor could be "threaded or otherwise attached to the stem extending upward from the cleaning flange 60." Appx0106 (554  19), Appx0162 (555  19). The Board's conclusion that Redford cannot on this theory anticipate is amply supported, and readily surpasses the substantial evidence standard.

a.    **When the Redford cleaning flange is operated as a hole cutter using the Redford body 20 and pin 54 as the drive mechanism, other claim limitations cannot be met.**

Milwaukee belatedly argues that "In rejecting Redford's pin as a viable drive structure, the Board ignored Redford's express disclosures regarding separability of the cleaning flange, which belie the Board's stated reasons for finding insufficient fulcrum means."  [p. 39] Milwaukee, however, fails to explain in its petition how the separated cleaning flange could be used to cut holes and generate slugs. Instead, Milwaukee was only arguing separability on the path to modifying Redford's cleaning flange.

As discussed in Irwin's Patent Owner Response (Appx0296-0298 (554 P.O. Resp. at 31-33), Appx0361-0363 (555 P.O. Resp. at 31-33)), Milwaukee's proposed modification of Redford to remove the nut driver and create a hole cutter driven by the Redford body 20 and pin 54, could result in a manually driven cutting device, but, among other things, the resultant device would not have the fulcrums required in the claims. *See* Appx0068-69 ('554 patent (independent claims 1 and 24)); Appx0083 ('555 patent (independent claims 1, 22)); *see also* Appx0296 (554 P.O. Resp. at 31), Appx0361-0362 (555 P.O. Resp. at 31-32) (citing, *e.g.*, Ex. 2006, ¶61 & Fig. 1). The challenged claims of the '555 patent recite at least two fulcrums. Appx0083-0084 ('555 patent claims 1-3, 6-9, 12-22, and 30-34). And the challenged claims of the '554 patent recite three fulcrums. Appx0068-0070 ('554 patent claims 2, 6-13, 31-32). Milwaukee posited that the S-shaped channel 56 of Redford has three fulcrums, as depicted in the following graphic from its Petition.



**Milwaukee's Annotated Figure 2 from Redford**
(Appx0105 (554 18), Appx0161 (555 18))

Referencing Milwaukee's annotations, Irwin explained that "the pin 54 and body 20, when driving the cleaning flange 60, would block use of the S-shaped channel as Petitioner's alleged second and third fulcrum/means." Appx0296 (554 P.O. Resp. at 31), Appx0362 (555 P.O. Resp. at 32).[3] Redford's Figures 5 and 6

---

[3] Milwaukee identified depression 55 as the patented first fulcrum (means). Appx0105-0106 (554 18-19 (citing '554 Patent at 7:9-10 and claim 1)); Appx0162 (555 19 (citing '555 Patent at 7:20-21 and claim 1)). Milwaukee identified depression 53 as the patented second fulcrum (means). Appx0105-0106 (554 18-19 (citing '554 Patent at 7:10-13 and claim 1)); Appx0162 (555 19 (citing '555 Patent at 7:21-24 and claim 1)). And Milwaukee identified a corner in the S-shaped channel 56 along the path between depressions 53 and 55 as the third fulcrum. Appx0105-0106 (554 18-19 (citing '554 Patent at 7:13-15 and claim 1)); Appx0162 (555 19 (citing '555 Patent at 7:24-26 and claim 1)).

(replicated below), depict presence of the pin 54 in its two resting positions within the channel 56.



**Redford Figure 5 (Appx0677)**     **Redford Figure 6 (Appx0677)**

Referencing Redford's Figure 5, Irwin explained that "the upper depression 53 is occupied by the pin 54 when the cleaning flange 60 is being driven for cleaning. Because the pin 54 extends from the body 20, and the body extends axially into the cleaning flange, it [the body] too would also block use of the alleged third fulcrum/means." Appx0296-0297 (554 P.O. Resp. at 31-32), Appx0362 (555 P.O. Resp. at 32) (citing Appx1179, Ex. 2006 ¶¶51, 62). In other words, when pin 54 is in position 53, pin 54 blocks Milwaukee's purported second fulcrum and, simultaneously, the body 20 through which the pin passes blocks the

purported third fulcrum. *Id.*; Appx1179 (Novak Decl., Ex. 2006 ¶51). This is further illustrated by Redford Figures 1 and 2 (replicated below), which show how the pin 54 passes into a hole in the body 20, and that the body 20 extends below and to both sides of the pin. *See* Appx0675-0676.



**Redford Figure 1 (Appx0675)**          **Redford Figure 2 (Appx0676)**

A comparable situation arises when pin 54 is in lower position 55, as depicted in Redford Figure 6. Appx1179 (Novak Decl. Ex. 2006 ¶51). Then, pin 54 blocks Milwaukee's purported first fulcrum and, simultaneously, the body 20

through which the pin passes blocks the purported third fulcrum. In either case—with pin 54 in position 53 or position 55—the user is left with only one "fulcrum." *Id.*

Thus, presence of the pin in either of the two resting positions—upper position 53 or lower position 55—prohibits use of not only the "fulcrum" in which the pin is sitting (Milwaukee's identified "first" and "second"), but also Milwaukee's proposed "third fulcrum," which is blocked by the body 20. *Id.*

Admittedly, the Board's Final Written Decisions could have been clearer in describing how the fulcrum limitations are not met when the body 20 and pin 54 are used as the drive mechanism. Nevertheless, Milwaukee's attempt to argue that the Board misapprehended the structure of Redford and concluded that the pin 54 could block both the first and second identified fulcrums simultaneously is disingenuous. (Appellant Br. at 38.) The Board cited as persuasive Irwin's arguments based on Redford's disclosures and further elucidated by expert testimony. Appx0013-0014, Appx0038-0040. All of those materials made clear that Redford's pin 54 would be in either spot 53 or spot 55, and in both cases, only one fulcrum would be available. *See supra.* Thus, where all of the challenged claims require at least two fulcrums, the Board's conclusion that "[f]or at least this reason, we are not persuaded that Petition has established by a preponderance of the evidence that the claims are anticipated by Redford under this second theory

[wherein the cleaning flange 60 is attached to and driven by the body 20 and pin 54]," Appx0014, Appx0040, is supported by more than enough evidence to satisfy substantial evidence review and should be affirmed.

Milwaukee attempts to read error into the Board's decision by arguing that the Board "ignored Redford's express disclosures regarding separability of the cleaning flange" when it determined that the pin and body would leave the cleaning flange with only one "fulcrum." (Appellant Br. at 39.) First, while Redford does state that it may be comprised of "a number of separate pieces" and "the cleaning flange could be removable," Appx0680 at 6:5-8, Redford in no way teaches that after using the cleaning flange as a hole cutter, one should disassemble the device so as to leverage slugs out of it, *see* Appellant Br. at 39 (asserting so). In making this argument for the first time in its Reply Brief, below, Milwaukee pointed the Board to nothing more than Redford's passing mention that the cleaning flange could be removable. Appx0112, Appx0168, Appx407, Appx441. Though Milwaukee now argues that a person of ordinary skill would "separate[ the cleaning flange] from the pin-based driving mechanism after cutting a hole, thereby providing access to all three fulcrums for purposes of slug removal" (Appellant Br. at 39) that statement is merely attorney argument, properly disregarded.

Furthermore, Irwin presented the Board with evidence that, in order to have

enough force to drive the cleaning flange so that slugs would be created (thus making any access to the S-shaped slot of Redford for use as "fulcrums" desired), the flange would have to be attached to an automated driver (not merely the manual pin and body taught in Redford). *See, e.g.*, Appx1140 at ¶13 (Novak stating a person of skill in the art would know that to create slugs a hole saw must be driven by a power tool). Accordingly, the Board was free to conclude that using the pin and body as the drive mechanism, slugs would not be created, and thus one of skill in the art would not have disassembled the device.

### b. The Redford cleaning flange does not have, and Redford does not teach that the flange should be modified to have, a structure to connect it to an alternative drive mechanism.

Because the drive structure taught by Redford (body 20 + pin 54) prohibits the cleaning flange (operating as a hole cutter) from meeting other claim limitations, *see supra*, the Board reasoned that it must be connectable to *another* drive structure (in a manner where the other claim limitations can be met) in order for Milwaukee's anticipation theory to succeed. Analyzing the contents of Redford and the expert testimony on both sides, the Board concluded, "[w]e do not see how 'a hole saw arbor could have been threaded or otherwise attached to the stem extending upward from the cleaning flange,' as argued by Petitioner Appx0106, Appx0162, without modifying Redford's structure. Nothing in Redford discloses that 'the stem extending upward from the cleaning flange' is either threaded or

otherwise attachable to a different drive structure without modification." Appx0012, Appx0037. The Board went on to say, "[N]or does petitioner cite to anything in Redford to support a finding that Redford's cleaning flange 60 is connectable to a threaded stem or to a different, second, attachment mechanism." Appx0013, Appx0038. These factual conclusions were supported by citation to Redford and testimony of Irwin's expert, Mr. Vallee. *Id.*

Based on evidence before it, the Board reasonably concluded, then, that the Redford cleaning flange is not connectable to another drive mechanism, and thus does not anticipate the claimed "hole cutter," which must be connectable to a drive mechanism. *See supra* (describing Milwaukee's theory of anticipation). This supported and reasoned decision satisfied substantial evidence review, and thus must be affirmed. *See In re Jolley*, 308 F.3d at 1317, 1320 (this Court will not find a Board decision unsupported by substantial evidence "simply because the Board chose one conclusion over another plausible alternative").

Notably, Milwaukee does not now argue that the Board's underlying factual determinations (*i.e.*, that Redford does not disclose or suggest modification to create a structure that would provide connectivity to a drive mechanism) are not supported. Milwaukee has chosen, instead, to argue that its own anticipation argument, accepted by the Board, is unreasonable. As factual conclusions, supported by record evidence, that address the Petitioner's posited theory of

anticipation, however, the Board's anticipation findings cannot rightly be overturned by this Court.

### C. Milwaukee's obviousness arguments based on Redford fail for the same reasons its anticipation argument fail and because Milwaukee failed to carry its burden to show a motivation.

As with its anticipation argument based on Redford, the obviousness argument based on Redford contained in Milwaukee's Petition presumed that the "hole cutter" preamble to the challenged claims is limiting. *See* Appx0114 (554 27), Appx0170 (555  27). As with its anticipation argument, Milwaukee argued that the challenged claims are obvious because "[i]t would have been obvious to use the [Redford] cleaning flange 60 as a conventional hole saw," whereby "slugs would inevitably get caught in the cleaning flange." *Id.* Milwaukee did not expound upon what it meant to operate like a "conventional hole saw." But Milwaukee had described in its anticipation argument that use of Redford cleaning flange 60 "as a conventional hole saw" would require attachment to a drive mechanism to produce work piece slugs. *See* Appx0106; Appx0162-0163. There, Milwaukee postulated that either the body 20 and pin 54 of Redford would be used as a drive mechanism, or another drive mechanism could be used. *Id.* For example, Milwaukee posited that "a hole saw arbor could have been threaded or otherwise attached to the stem extending upward from the cleaning flange 60." *Id.*

In its Reply Briefs, Milwaukee added that "one of ordinary skill would have found it obvious to adapt the Redford hole saw design[4] for use with an arbor or other well-known drive mechanism." Appx0413, Appx0447 (Pet. Reply at 18).

Analyzing the anticipation ground, the Board had concluded, as described above in Part B, that Redford cleaning flange 60 does not have structure that makes it connectable to a drive mechanism other than its own body 20 and pin 54. *See supra*, Part B.3.b. The Board also had drawn the supported, factual conclusion that using the body 20 and pin 54 as the drive mechanism would mean other claim limitations could not be met, *see supra*, Part B.3.a, and incorporated that conclusion into its obviousness analysis. Appx0017-0018 (Board cross referencing its prior analysis); Appx0043 (same).

Thus, in analyzing Milwaukee's obviousness ground based on Redford, and consistent with Milwaukee's statement in its Reply, the Board was left to evaluate whether it would have been "obvious to adapt the Redford [cleaning flange 60] for use with an arbor or other well-known drive mechanism." *See* Appx0413 (554 Reply at 18), Appx0447 (555 Reply at 18). Doing so, the Board concluded that Milwaukee "provide[d] insufficient reasoning as to why a person of ordinary skill in the art would have added a second, alternate drive structure to Redford's

---

[4] "Hole saw design" here was a liberty taken by counsel in referencing Redford cleaning flange 60.

cleaning flange *60.*" Appx0016; Appx0042, and thus did not carry its burden on the question of patentability. To reach this conclusion, the Board considered, *inter alia*, the conclusory testimony of Milwaukee's expert, Mr. Pangerc, and the testimony of Irwin's two experts, Mr. Vallee and Mr. Novak. Appx0016-0017; Appx0041-0042. The Board ultimately credited the latter testimony and concluded that Petitioner's proposed modification to the cleaning flange to enable connectivity to a drive mechanism was "premised on an impermissible use of hindsight" "rather than on a supported reason to modify." *Id.*; *see also In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1368 (Fed. Cir. 2004) ("[T]he Board is entitled to weigh the declarations and conclude that the lack of factual corroboration warrants discounting the opinions expressed in the declarations."). "Among the difficult challenges of applying the doctrine of obviousness is avoidance of even a hint of hindsight." *Cheese Sys. Inc. v. Tetra Pak Cheese and Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013). Yet the Board's analysis, and the record evidence cited therein, are more than "adequate to support [this] conclusion," and thus the Board's conclusion readily passes the substantial evidence review standard. *See Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

**D. There is no reversible error in the Board's ruling that the challenged claims are nonobvious over the combination of Redford and Starbuck based on the Board's failure to expressly state the level of ordinary skill in the art in its Final Written Decisions.**

Essentially two standards of ordinary skill were proposed to the Board; for argument's sake, we will use those skills as described by Milwaukee. (Appellant's Br. at 29). The first, higher standard was proposed by Irwin's expert Mr. Vallee and Milwaukee's expert Mr. Pangerc: a person having a bachelor's degree in mechanical engineering and at least three years of practical experience in power tool and hand tool design. (*Id.*) The second, lower standard was proposed by Irwin's expert Mr. Novak: "a person having a bachelor's degree in engineering." (*Id.* (citing Appx1147 (Novak Decl. ¶35))).

Milwaukee's argument turns on whether the Board held a patent claim nonobvious "using" Mr. Novak's purportedly "too low" standard of ordinary skill. *See Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1323 (Fed. Cir. 2011); Appellant Br. at 31. It did not. Although the Board cited Mr. Novak's testimony in its obviousness decision on Redford in light of Starbuck, the Board did not, as Milwaukee alleges, bases it's conclusions on his testimony. Accordingly, Milwaukee's arguments for vacating the Board's obviousness decision are moot.

Even if the Board had relied exclusively upon Mr. Novak's testimony for any of its analysis (which it did not), it would have been apparent from the record

that the Board did resolve the level of skill in the art—it would have been resolved as being the level espoused by Mr. Novak. As a factual determination, the level of skill in the art resolved by the Board would receive substantial evidence review. The Board was free to rely upon the testimony of Irwin's expert, Mr. Novak, who also is a named inventor of the patents at issue, in determining the level of skill. "If the evidence in [the] record will support several reasonable but contradictory conclusions, [this Court] will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002). Finally, Milwaukee's attorney argument about what a person of ordinary skill in the art would have thought about the combination of Redford and Starbuck is not pertinent, as attorney argument without support is irrelevant.

> **1. The Board determined that the challenged claims are nonobvious over the combination of Redford and Starbuck, without the aid of Mr. Novak's testimony.[5]**

Though the Board's written decision is self-evident, for the sake of thoroughness, Irwin further describes the Board's analysis (and the passing references to Mr. Novak therein) in the paragraphs that follow.

> **a. Milwaukee failed to carry its burden to demonstrate that it would have been obvious to merge Redford's S-shaped channel**

---

[5] Milwaukee does not challenge the Board's nonobvious decision on Redford alone on the basis of having improperly relied on Mr. Novak's testimony.

**56 with Starbuck's slots 22 to arrive at Milwaukee's proposed modification; Mr. Novak merely concurred.**

The Board concluded that Milwaukee's argument that "it would have been obvious to add Starbuck's slots 22 to Redford's cleaning flange 60 because 'such a combination simply involves the use of a known technique to improve a similar device in the same way, with predictable results'" "is premised on an unsupported assertion" that is the "result of impermissible hindsight." Appx0018-0020, Appx0043-0045; *see also Cheese Sys. Inc. v. Tetra Pak Cheese and Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013) ("Obviousness 'cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention.'" (quoting *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998))). Indeed, at oral argument, the Board made it clear that it did not see why "one skilled in the art when combining these [would] add those depressions ['in both ends of [Redford's channel] for a pin to rest in'] on both ends of Starbuck[.] If the reason in Redford was for holding the pin, why would you put those in Starbuck when you don't have a pin?" Appx0596-0597 (28:16-29:2) (Deputy Director Slifer inquiring of Milwaukee's counsel). When Milwaukee's counsel could only answer that one would maintain the depressions "to preserve the three fulcrums," the Board asked if that wasn't merely "hindsight." Appx0597 (29:3-11). After some floundering and attorney speculation (that just bolstered the Board's hindsight conclusion), Judge Cocks asked, "What

31

*in the record* suggests that a person of ordinary skill in the art would want to preserve the three fulcrums that are ostensibly shown in Redford? Other than that is what the claim says, why preserve three fulcrums?" Appx0598 (at 30:15-19) (emphasis added). The only evidence Milwaukee pointed to was a baseless statement by Milwaukee's expert that it would have been "obvious to try to preserve the third fulcrum;" Milwaukee presented no other "evidence" of a motivation to combine. Appx0598 (at 30:20-22); *see ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012) (stating that "the expert's testimony on obviousness was essentially a conclusory statement that a person of ordinary skill in the art would have known … how to combine any of a number of references to achieve the claimed inventions"; that the opinion was insufficient and "fraught with hindsight bias").

In its Final Written Decision, the Board concluded that Milwaukee had utterly failed to carry its burden on the combination of Redford and Starbuck; in rendering this decision, the Board analyzed and cited Redford, Milwaukee's arguments, and case law. Appx0018-0020, Appx0043-0045.

After reaching this conclusion, the Board—in a "see also" citation—went on to cite testimony offered by both of Irwin's experts (Mr. Vallee and Mr. Novak) that was consistent with the Board's conclusion. Appx0021-0022, Appx0046-0047. Citing such supplementary evidence—even if given less weight, for example,

because the Board may have disagreed with the level of ordinary skill set as the basis of an expert's opinion—is far from "relying on [such] testimony [in a way that] affected the outcome in this case," as Milwaukee alleges. (Appellant brief at 31.) The Board simply did not base its conclusions upon Mr. Novak's testimony.

> **b. Milwaukee failed to carry its burden to demonstrate that if Redford's S-shaped channel 56 were merged with Starbuck's slots 22, it would have been done in a way to preserve the alleged "third fulcrum" shown in Milwaukee's proposed modification; Mr. Novak again concurred.**

Milwaukee further argued to the Board that it would have been obvious to merge Redford's S-shaped channel 56 with Starbuck's slots 22 to arrive at Milwaukee's proposed modification. The Board found this argument unpersuasive, but, again, not by relying on Mr. Novak's testimony. Rather, in its Final Written Decision, the Board concluded that Milwaukee had not established obviousness by a preponderance of the evidence because Milwaukee failed to address adequately "how Redford's S-shaped channel 56 and Starbuck's slot 22 would be combined to result in the configuration that ... preserves the alleged 'third fulcrum' shown in the proposed figure." Appx0021, Appx0046-0047 (quoting Patent Owner Response). As is discussed above, Milwaukee's expert Mr. Pangerc did not offer an explanation as to why a person of ordinary skill in the art would maintain the "3rd fulcrum," as the proposed modification purported to do. (*Id.*) Demonstrating a

33

motivation to maintain this fulcrum was Milwaukee's burden, and Milwaukee failed to carry it.

Indeed, the limited nature of Mr. Pangerc's testimony was discussed at length during the oral hearing. Both parties discussed Mr. Pangerc's summary statement at ¶14 of his declaration wherein he said it would be obvious to try to preserve the third fulcrum, but Mr. Pangerc gave no basis or support for that opinion. Appx0598, Appx0603, Appx0640-0641 (at 30:15-31:4; 35:6-16; 72:23-73:8). The Board specifically asked what basis Mr. Pangerc had for his opinion, Appx0598 (at 30:23-24); gave Milwaukee additional time to find this basis, Appx0599 (*id.* at 31:1-5); and still no basis was offered (Appx0603 (at 35:6-16)). That is, of course, because Mr. Pangerc provided no basis for this conclusion. Appx0656 (*See* Pangerc Declaration, Ex 1002, ¶14). Though Milwaukee would have had the Board fill this gap with its own opinion, the Board cannot properly "substitute[] its own opinion for evidence of knowledge of one of ordinary skill in the art." *Brand v. Miller*, 487 F.3d 862, 870 (Fed. Cir. 2007).

Furthermore, as Irwin discussed extensively in briefing and again at the oral hearing, Mr. Pangerc had no role in preparing Milwaukee's proposed combination of Redford; the proposed combination was identified and prepared by Milwaukee's counsel. Appx0639-0640 (71:22-72:2), Appx0308 (P.O. Resp. at 43), Appx0240-0241 (P.O.'s Objections to Evidence Submitted With Petition); Appx0463-0470

34

(P.O.'s Mot. To Exclude). Accordingly, the Board was entitled to accord, and should have accorded, little or no weight to Mr. Pangerc's testimony on this point. *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1368 (Fed. Cir. 2004) ("[T]he Board is entitled to weigh the declarations and conclude that the lack of factual corroboration warrants discounting the opinions expressed in the declarations."); *accord* Appx0023, Appx0049 (concluding, "It is within our discretion to assign the appropriate weight to the testimony offered by Mr. Pangerc."); Appx0023, Appx0048-49 (same).

The Board likewise found Mr. Pangerc's testimony regarding the position of the 3rd fulcrum "midway between [Redford's] fulcrums 53, 55 in order to create evenly spaced steps," Appx0656 (Ex. 1002 at ¶14), "inapposite" because Milwaukee's proposed positioning of the third fulcrum is not "midway," Appx0022, Appx0047. The balance of Milwaukee's arguments on the combination of Redford and Starbuck (first raised below in its Reply briefing) were, as the Board rightly concluded, "conclusory and inadequately supported by evidence." *Id.*. In addition, the Board noted, Irwin presented evidence contrary, including the testimony of Mr. Vallee, who testified that, in the proposed modification, the "claimed third fulcrum serves no practical purpose." Appx1098-1099.

Only after concluding "that the only credible reason that emerges from the record ... for keeping the third fulcrum in the manner proposed by Petitioner is

based on impermissible hindsight," Appx0022, Appx0047, did the Board reference the testimony of Mr. Novak, who concurred with the Board's independent conclusion that "[t]he only possible reason that one of skill in the art might keep [the third fulcrum] would be if that person recognized the need for at least three fulcrums ... by reading the '554 patent," Appx0022, Appx0047-0048 (quoting Ex. 2006 paragraph 77). Again, the Board did not rely upon Mr. Novak's testimony, but rather cited it as a consistent, concurring opinion. Because the Board did not rely upon Mr. Novak's testimony, there could be no error in the Board's identification of the level of ordinary skill in the art, as argued by Milwaukee. *See, e.g.*, *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("[U]nsworn attorney argument ... is not evidence and cannot rebut ... other admitted evidence ....").

**2.    The Board's failure to expressly state the level of skill in the art does not mean the Board did not resolve the level of skill, and had the Board resolved the level of skill to be that espoused by Mr. Novak, that decision would have been supported by substantial evidence.**

As noted above, even had the Board relied exclusively upon Mr. Novak's testimony for any of its analysis (which it did not), it would have been apparent from the record that the Board did resolve the level of skill in the art—it would have been resolved as being that espoused by Mr. Novak: "a person of ordinary skill in the art as of [the priority date of] January 2011 would be a person having a

36

bachelor's degree in engineering." Appx1147 (Novak Decl. ¶35). As a factual

determination, the level of skill in the art resolved by the Board would receive

substantial evidence review in this Court. *In re Kubin*, 561 F.3d 1351, 1355 (Fed.

Cir. 2009) (level of skill in the art as a fact question); *In re Gartside*, 203 F.3d

1305, 1313 (Fed. Cir. 2000) (fact questions resolved by the Board are reviewed for

substantial evidence). There is ample evidence supporting Mr. Novak's conclusion.

As Mr. Novak explained:

> In order to determine the characteristics of a hypothetical
> person of ordinary skill in the art of the '554 patent at the time
> of the claimed invention, I have considered the prior art and the
> various approaches to address tool design in the prior art, the
> types of problems encountered in the art and the solutions to
> those problems, the alleged problems encountered by the
> inventor as described in the '554 patent, the sophistication of
> the technology involved, and the educational background and
> experience of those actively working in the relevant field at the
> time of the invention. I have also considered the technology
> available between around January 2011 and November 2013,
> and the professionals with whom I worked during that time,
> including their levels of education, sophistication, and activities
> in professional associations. I understand that these types of
> factors are typically considered to determine the level of skill in
> the art.

Appx1147 (Novak Decl. ¶34). The factors Mr. Novak considered are entirely

consistent with factors deemed relevant by this Court, *see, e.g.*, *Daiichi Sankyo Co.*

*v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (listing factors for

determining ordinary skill). Thus if the Board had determined that "a bachelor's

degree in engineering" defined the level of ordinary skill in the art, that decision

would be supported by substantial evidence and must be left undisturbed. *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002) ("If the evidence in [the] record will support several reasonable but contradictory conclusions, [this Court] will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative."); *see also In re Kahn*, 441 F.3d at 985.

### 3. Milwaukee's attorney argument regarding what a person of ordinary skill would have thought of the Redford and Starbuck references is irrelevant.

Milwaukee appears to have included its argument that Mr. Novak's testimony was used improperly to give Milwaukee's counsel a platform to argue that a person of ordinary skill would have thought to combine the Redford and Starbuck references. (Appellant Br. at 33-34.) First, in light of the above, what a person of ordinary skill in the art would have thought on the question of obviousness is not before this Court. In addition, Milwaukee's attorney arguments made now on appeal are immaterial. (*Id.* at 33 (offering attorney argument that a different level of skill in the art than that espoused by Mr. Novak "would be able to look deeper" and reach the attorney-argued conclusion that the Redford contains an "underlying disclosure of a hole saw" (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007))); *id.* (offering attorney conclusion that Redford and Starbuck are "similar devices" under *KSR*); *id.* at 34 (providing counsel's conclusion that "a

person having ordinary skill in mechanical engineering and tool design would have considered both references when attempting to improve hole cutter technology," but citing evidence from Milwaukee's expert, Appx0656 (Pangerc Decl. ¶15), that does not provide or support that conclusion). Such attorney argument is not evidence. Thus, even were the question before this Court, it could not be considered for this proposition. *See, e.g., Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("[U]nsworn attorney argument ... is not evidence and cannot rebut ... other admitted evidence ....").

Furthermore, Milwaukee's arguments ignore the Board's evidentiarily supported factual conclusion that Redford does not disclose a hole saw. *See supra* Part E (discussing substantial evidence for conclusion Redford does not disclose a hole cutter). In the face of such a contrary finding of fact, the pseudo-legal arguments by Milwaukee's counsel fail. This would be the case even had Milwaukee cited expert testimony regarding the combination of Redford and Starbuck rather than, without citation, concluding that "[h]ad the Board considered Redford and Starbuck using the correct level of ordinary skill … it could not have dismissed Redford's disclosures from the realm of what could be combined with Starbuck …." *Compare supra* Part B.3 (discussing substantial evidence for conclusion Redford does not disclose a hole cutter), *with* Appellant Br. 33-34.

Regardless, as stated above, because the Board did not rely upon Mr. Novak's testimony in reaching its conclusions, Milwaukee's arguments about how persons of various skills would or would not have interpreted or treated the cited art are irrelevant.

### E. The Board's conclusions regarding both Milwaukee's 102 and 103 arguments should be affirmed for other reasons

On appeal, the "correctness of the decision appealed from can be defended by the appellee on any ground that is supported by the record." *Rexnord Indus., LLC v. Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013); *see also Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 822 n.1 (Fed. Cir. 1989) ("Appellees always have the right to assert alternative grounds for affirming the judgment that are supported by the record."); *cf. Glaxo Grp. Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998) ("As a general proposition, an appellate court may affirm a judgment of a district court on any ground the law and the record will support so long as that ground would not expand the relief granted.").

### 1. The Board's determination that Redford does not anticipate the challenged claims is supported by other evidence that the Redford cleaning flange does not meet the requirements of the challenged claims.

As the Board noted, the inability for the cleaning flange to function as a hole cutter because it does not have a structure—or teach a way to be modified to have a structure—to connect it to a drive mechanism is but one reason that the claims are not anticipated by Redford. Appx0013 (saying "for at least this reason"), Appx0038 (same). The Board's ultimate decision that Redford's cleaning flange does not anticipate the claimed invention is right for many additional reasons, summarized below. For these reasons, too, the Board's decision should be affirmed. *See Rexnord Indus.,* 705 F.3d at 1356.

### a.  Redford does not disclose or suggest anything about creation of slugs or an aperture, fulcrums, or means for levering slugs

All of the independent claims of the 554 and 555 patents require an "axially elongated aperture" and either "fulcrums" or "means…for engaging the lever and for levering slugs." Appx0068-0069 (554 Patent, claims 1 and 24), Appx0083 (555 Patent, claims 1 and 22). The Board ruled that the "axially elongated aperture" must be "capable of receiving therethrough a lever for removing a work piece slug from an interior of the blade body by a user." Appx0009. The Board also ruled that the fulcrums and means must be "capable of…engaging the lever" for levering slugs out of a blade body of the hole cutter. *Id.*

Redford discloses a cleanout tool used by a utility worker to remove debris (ice, sand, dirt, etc.) from around a recessed nut on an outdoor utility box.

41

Appx0679. Nowhere does Redford disclose the cleaning edge of the cleaning flange as cutting holes to create work piece slugs. *Id.*

Recognizing that Redford does not disclose cutting a hole and creating a slug, Milwaukee argues that "slugs would inherently have become lodged in the cleaning flange 60" during use. Appx0106, Appx0163. But in order for a feature to be inherent in a reference, the missing descriptive matter must be *necessarily present,* and the fact that a certain thing *may* occur is not sufficient. *In re Robertson,* 169 F.3d at 745.

Redford does not disclose using the cleaning flange 60, or any other portion of the combined nut area cleaner and driver tool 10, to cut holes and generate workpiece slugs, much less anything about optimizing removal of the slugs. Redford does not disclose or suggest use of the S-shaped channel 56 or pin 54 for any purpose other than maneuvering the cleaning flange 60 between the retracted (Fig. 6) and cleaning (Fig. 5) positions. Appx0674-0681

> **b.  There is no indication in Redford that the channel would have sufficient strength or rigidity to function as a fulcrum point.**

The '554 Patent and the '555 Patent claims all require a plurality of fulcrums "for engaging the lever and for levering slugs" out of the blade body "by applying a sufficient levering force against [the fulcrums] to lever a slug towards the cutting edge." Appx0068-0069 (554 Patent, claims 1 and 24); Appx0083 (555 Patent,

claims 1 and 22).  For a fulcrum to be "for engaging the lever and levering slugs," as required by claims 1 and 24 of the '554 Patent and claims 1 and 22 of the '555 Patent, a fulcrum or means must have sufficient strength and rigidity to act as a base for the levering force applied to it by the tool/lever. Appx1152 ¶52; Appx1119-1120 ¶¶45, 46; Appx0954 134:20–25. (The term "applying a sufficient levering force" was added by amendment to both independent claims 1 and 24 during prosecution. Appx1237, Appx1240. Irwin, in reference to this amendment, argued that the "fulcrum must have sufficient strength and rigidity to act as a base for the levering force applied to it by the tool/lever." Appx1247.)  The Redford cleaning flange does not meet this requirement.

Contrary to Milwaukee's assertions, Appx0104-0106, Appx0160-0162 (Paper 2, 17-19)), Redford provides no disclosure or suggestion that lower depression 55, upper depression 53, or any other portion of the S-shaped channel 56 are fulcrums or can be used as a fulcrum. Instead, Redford discloses movement of the pin 54 "through" the S-shaped channel 56 for moving the device from its cleaning mode to its fastener driving mode. *See* Appx0680 (Ex. 1003, 5:38–45). Pin 54 is "configured for maneuvering through said S-shaped channel 56." Appx0680 (*Id.* 5:44–45). And, as discussed in more detail below, Milwaukee's expert admitted (reluctantly) that he did no testing to support the assertion that the places in the S-shaped channel 56 of Redford that Milwaukee identifies as

fulcrums are sufficient to act as fulcrums and support a lever. Appx0914-0916 (Ex. 2003, 94:13–96:3).

"[M]aneuvering [a pin] through said S-shaped channel 56," Appx0680 at 5:43-45, is a relatively light-duty operation—unlike levering a slug—so it requires only a small pin and S-shaped channel. Appx1142-1143 (¶20). (The '554 patent, on the other hand, discloses levers such as a number 2 screwdriver with a width of about 0.27 inch, Appx0065-0069 at 6:22–28; 6:53–58; 9:22–27; 10:52–60; 13:64–67, a stronger and more robust device that requires adequate support. Redford provides no disclosure or suggestion that the S-shaped channel 56 and/or the cleaning flange 60 are (or need to be) strong/rigid enough to withstand the levering force necessary to pry a work piece slug from within the cleaning flange. See generally Appx0674-0681; *see also* Appx0299, Appx0364.

Milwaukee cannot argue that sufficient strength and rigidity is inherent in the Redford cleaning flange because there is no disclosure demonstrating sufficient strength or rigidity; that requirement of the claims at issue is not inherently present in Redford. Indeed, Redford provides that the cleaning flange could be made from metal, plastic, and/or a composite material. Appx0680 (Ex. 1003, 5:64–67). But strong durable metals are used to make hole cutters so they are capable of cutting through various materials. Appx1140 (Ex. 2006, ¶14). In fact, for hole cutters,

metal has to be conditioned through demanding processes that one of skill in the art would not bother with for the lighter cleaning loads of Redford. Appx1151 ¶49.

For inherency, it must be clear that "the missing descriptive matter is necessarily present in the thing described in the reference … [inherency] may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *In re Robertson*, 169 F.3d at 745 (Fed. Cir. 1999) (citations omitted).

As pointed out by Irwin's expert and inventor of the '554 and '555 patents, Mr. Novak, significant effort went into designing the hole cutters disclosed in the '554 and '555 patents to withstand the levering forces. Appx1144 (¶26). Even assuming the cleaning flange 60 of Redford were strong enough to be used as a hole cutter, which Irwin does not concede, it would only be necessary that the rigid teeth 64 and cylindrical body be strong enough to withstand the rotational/cutting forces of such use. There is no requirement or correlation in Redford that the wall structure adjacent the S-shaped channel 56 (the location of Petitioner's alleged fulcrums) also be strong/rigid enough to withstand levering force for removing a work piece slug. *See* Appx0674-0681; *see also* Appx1120 ¶46.

Milwaukee's expert admitted that he did no testing to support the assertion that the places in the S-shaped channel 56 of Redford that Milwaukee identifies as fulcrums are sufficient to act as fulcrums and support a lever. Appx0914-0916

(94:13–96:3). Milwaukee's expert, Mr. Pangerc has not built a hole saw with the

S-shaped channel of Redford and tested it. Appx0995-0996 (175:23–176:2).

Similarly, Mr. Pangerc did no computer modeling of the Redford device,

Appx1008 188:21–23), and he did no modeling of adopting the S-shaped channel

of Redford into a hole saw, Appx1009 (189:4–6). Again, Milwaukee merely relied

on Redford's passing disclosure of the term "hole saw" as sufficient evidence that

Redford teaches that spots on the S-channel 56 need to be strong enough to act as a

fulcrum to support a lever a lever in removing a plug. Appx0916-0917 (96:18–

97:8). During the oral hearing, the Board rightly questioned this assumption.

Appx0582-0587 (14:4 – 19:21). That single word provides no such teaching; after

all, there are hole cutters that do not have any slots acting as fulcrums. Starbuck,

for example, states that the holes in the top of the device 24, opposite the cutting

edge, not the slots 22, are intended for slug removal. Appx1129 (Ex. 2004, ¶64).

### c. Redford does not anticipate the claims because the nut driver prohibits the alleged slot from receiving a lever.

In addition, Redford's S-shaped channel 56 could not be used to receive a

lever because it would be blocked by nut driver 40. As illustrated in Figure 1 of

Redford, Appx0675, when the combined nut area cleaner and nut driver tool 10 is

in the cleaning position (as also shown in Figure 5 (Appx0677)), the lower rim 42

of the nut driver 40 is coincident with the lower edge of the depth gauge 70. In this

position, the nut driver 40 prevents the S-shaped channel 56 from receiving a lever. Appx0675; *see also* Appx0294 (554 P.O. Resp. at 29), Appx0359 (555 P.O. Resp. at 29). Redford therefore does not anticipate the claims of the ‘554 and ‘555 patents.

* * *

If this Court determines that the Board has not sufficiently supported its decision with record evidence (which Irwin firmly thinks it has), the Court should consider these additional reasons for affirming the Board’s decisions. *See Rexnord Indus., LLC v. Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013) (explaining that “[o]n judicial review, the correctness of the decision appealed from can be defended by the appellee on any ground that is supported by the record”). Short of that, Irwin asks that this Court remand for the Board to further elucidate its analysis and the evidence in support and to expound upon those other reasons that support its decision that Redford does not anticipate.

**2. Even if this Court were to decide that the Board improperly resolved the level of ordinary skill at a level too low and that the Board would not have reached its same nonobvious conclusion without reliance on testimony based on that lower-level of skill, Board’s ultimate finding of nonobviousness still should be affirmed.**

Even under the higher level of ordinary skill in the art argued by Milwaukee on appeal, the claims of the ‘554 and ‘555 Patents are not obvious over Redford in

light of Starbuck, for reasons the Board did not explicate in its decision but are apparent from the record.[6] *Rexnord Indus.*, 705 F.3d at 1356 ("On judicial review, the correctness of the decision appealed from can be defended by the appellee on any ground that is supported by the record …."). The Board's decision is correct because Milwaukee clearly used the '554 Patent as a guide for constructing its alleged figure merging the S-shaped channel of Redford with the oblique slot of Starbuck. Milwaukee reverses the whole orientation of the S-shaped channel of Redford without explanation or justification, ruining any ability of Redford's cleaning flange to be driven for cleaning, its intended purpose. Then, with no support or admission that it did so, Milwaukee fine tunes the length, orientation and merging points of Starbuck to create a slot that coincidentally preserves a vestigial edge of Redford's S-shaped channel in the final merged figure. Milwaukee points to that vestigial edge as the alleged "third fulcrum." Appx0304, *see* Appx0118.

The claims of the '554 and '555 patents would also not be obvious over Redford. As described above, Redford itself contains no teaching or suggestion that its S-shaped channel could be used to lever slugs. Even if Redford's cleaning flange were modified to be able to cut holes, the slugs resulting therefrom would

---

[6] Milwaukee does not argue that Mr. Novak's testimony improperly influenced the Board's conclusion on obviousness over Redford alone.

not form because the nut driver and, even if the nut driver was removed, the body 20 supporting the necessary (for cutting) pin 54 would block creation of a slug. And, even if a slug were created, the cleaning flange could be retracted by running the pin to the bottom of the S-shaped channel to advance the body to the same level as the teeth of the cleaning flange and thereby eject the slug. With no need to lever slugs, there is no need to use or strengthen the S-shaped channel for use in levering slugs.

In addition, as laid out clearly below, even if the cleaning flange were disassembled, the S-shaped channel would jam with swarf and therefore deter retention of the S-shaped channel if the cleaning flange were adapted for driving by a conventional arbor. With no use as a hole cutter, one of ordinary skill in the art would not realize the possibility that the S-shaped channel could be used for levering slugs. Thus there would never be any reason to "improve" slug removal with Starbuck, much less destroy Redford's intended purpose of cleaning and retraction to create a conventional hole cutter. The only way Milwaukee arrives at separating and modifying Redford's cleaning flange for hole cutting while retaining the S-shaped channel, is through impermissible hindsight based on the claims of the '554 and '555 patents.

        **a. The Board's finding of nonobviousness regarding the combination of Redford and Starbuck is correct, even if Mr. Novak's testimony is disregarded.**

The Board found that Milwaukee's reasoning for combining Redford with Starbuck was the result of impermissible hindsight. Appx0019. Citing to the Redford and Starbuck references, as well as Mr. Vallee's testimony, the Board found that Milwaukee had ignored parts of Redford necessary for a full appreciation of what that reference disclosed, instead "picking and choosing Redford's brief characterization of the cleaning flange as a 'hole saw' to support its position." Appx0020-0021. The Board also found that a person of ordinary skill in the art would not maintain the third fulcrum when modifying Redford. Appx0021-0022, Appx0046-0047 (citing Mr. Vallee and Milwaukee's Reply).

The record clearly supports finding that claims of the '554 Patent and '555 Patent are not obvious over Redford and Starbuck.

Milwaukee argued for using Redford's nut cleaning and removal device as a hole saw despite several obstacles to modifying the Redford device that render it neither anticipatory nor obvious. Milwaukee tries to justify its leap based on Redford's passing mention of "hole saw," and then uses that passing reference as justification for merging Redford's channel and Starbuck's slot in an illogical way via a long series of unacknowledged and unsupported manipulations and modifications. Petitioner has included so many modifications and adjustments – including reversing the orientation of the channel shown in Redford, thus rendering it incapable of operation as the cleaning flange disclosed – that it presents the

paradigm of impermissible hindsight. *See Mintz v. Dietz & Watson*, 679 F.3d 1372, 1379 (Fed. Cir. 2012) (cautioning against the "forbidden use of hindsight," especially regarding technology that seems relatively simple or easily understood).

Milwaukee did not establish that a person of ordinary skill in the art would have been motivated to combine Redford and Starbuck, in part because they are directed toward devices with entirely different purposes. Redford is directed to a combined nut recess cleaner and nut driver tool. Appx678, Appx0020, Appx0045. Redford goes to great lengths to describe the drawbacks of cutting and damaging the area around a nut. Even if Redford's cleaning operation generated debris that remains in the cleaning flange 60, the user could retract the cleaning flange to the retracted/fastener driving position (illustrated in Figure 6) and the nut driver 40 would push out the debris. [Id. at 42]  The Board recognized that one of skill in the art would have to turn away from Redford's primary thrust of cleaning and retraction before even beginning to think of it as being applicable to improving a conventional hole cutter.

Starbuck, in contrast, is directed to a trepanning tool for cutting holes through wood or metal. Appx0683 (Ex. 1004 at 1:-4). "If a reference is directed to a different purpose, the inventor … accordingly [has] less motivation or occasion to consider it." *In re Klein*, 647 F.3d 1343, 1351 (Fed. Cir. 2011).

The only reason one of skill in the art would have for combining Starbuck with Redford would be to facilitate slug removal. But, slug removal would not be needed for Redford because the nut driver blocks slug production and any trapped debris (or slug if it were generated) would be pushed out by retraction of the cleaning flange. Absent such need, Milwaukee's only motivation for modifying Redford with Starbuck comes from the '554 and '555 patents themselves. This is impermissible hindsight. Appx17, Appx42 (555 Final Written Decision at 17); *see Mintz*, 679 F.3d at 1379.

> **b. For the following additional reasons, all of which are supported by the record, even absent the testimony of Mr. Novak, the challenged claims are nonobvious over Redford in light of Starbuck.**

Even assuming there were some motivation to combine Redford and Starbuck, at least a dozen steps would need to be taken in order modify those two references to produce Milwaukee's proposed combination. Appx0309-0310 (554 P.O Resp. at 44-46), Appx0375-0376 (555 P.O. Resp. at 45-46). Milwaukee provides an illustration, "Redford modified in view of Starbuck," of what would allegedly result from their proposed combination. The only reasonable explanation of how this figure was created was through the teachings of the '554 patent. ['554 response, p. 43]



Redford modified in view of Starbuck

[p. 31 of '554 petition]

It would not have been obvious for a person with ordinary skill in the art to follow these multiple steps to combine the two references in the manner Milwaukee suggests. *See Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1344 (Fed. Cir. 2000) (rejecting obviousness argument because party "did not show sufficient motivation for one of ordinary skill in the art at the time of the invention to take any one of the following steps, let alone the entire complex combination ….").

As a key example, the orientation of Redford's S-shaped channel would have to be retained, its possible use to facilitate prying slugs recognized, and then reversed prior to combining it with Starbuck's slot. Appx0313 (554 P.O. Resp. at 45, 48), Appx0378 (555 P.O. Resp. at 48). But the orientation and shape of the S-shaped channel 56 in the cleaning flange 60 is inconsistent with using the cleaning flange as a hole cutter. *E.g.*, Appx0288, Appx0291, Appx0353, Appx0356 (P.O.

Resp. at 23, 26). For example, because the S-shaped channel 56 is not obliquely angled and extends in the wrong direction around the body of the cleaning flange 60, it would impede removal of "swarf" (the dust and chips that result from cutting). Appx0288-0289, Appx0353-0354 (*Id.* at 23-24) (citing Starbuck and the expert testimony of Mr. Vallee and Mr. Novak). Milwaukee admitted this limitation when it proposed that if the slots on prior art Starbuck were combined with the S-shaped channel of Redford, the S-shaped channel would be *reversed* so as to allow for swarf removal. Appx0596 (28:7-11).

This very same problem would stop one of skill in the art from keeping the S-shaped channel during design of the arbor-driven hole cutter from Redford's cleaning flange. ['554 response p. 47]  At this point in the process, the designer would have to decide to keep the non-functional S-shaped slot before having a chance to realize it may provide the alleged three fulcrums. Any prior attempts to drive the cleaning flange with the pin 54 and body 22 would block the opportunity to discover and use the S-shaped slot as a fulcrum. Milwaukee in its Petition provided no testing or other data to support its alleged sparing of wall strength, saving on machining/manufacturing costs, improvements in swarf removal or even functioning as a hole cutter. Milwaukee's only support for these alleged improvements comes from the patents themselves.

Redford provides no teaching or suggestion to reversing the channel, nor any indication that reversing the channel would allow the device to work as Milwaukee argues. *Id.*; *see Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009) (a combination of known references is not obvious "if the prior art indicated that the invention would not have worked for its intended purpose or otherwise taught away from the invention").

In fact, if the S-shaped channel of Redford were reversed, the channel would no longer be operable for its intended purpose as a drive channel with a pin moving in it. Appx0313 (554 P.O. Resp. at 48), Appx0378 (555 P.O. Resp. at 48) (citing Appx1124 (Ex. 2004, ¶53)). Reversing the orientation of the channel would require the pin to be seated within the upper depression of the channel, now on the upper right hand side, to hold the cleaning flange in the cleaning position. *Id.* However, the opposing force of work piece material impacting the cleaning flange would cause the pin to slip out of the upper depression and slide into the adjacent portion of the S-shaped channel, and the cleaning flange would not work as a hole cutter. *Id.* At the hearing, Deputy Director Slifer stated that "I thought part of the argument to that was when you reverse the direction [of the channel of Redford], you reverse the intended purpose of that drive channel in Redford with a pin moving in it, which I don't think that can really be disputed. If you rotate that the other direction, the nut driver would extend down when you are in a clockwise

rotation and would retract in a counterclockwise, which is opposite of what Redford originally disclosed." Appx0645 (77:4-12). Because Milwaukee's proposed modification, which requires reversing the direction of Redford's channel, would cause the device to not function for its intended purpose or as a hole cutter, combining Starbuck with Redford to produce a hole cutter would not have been obvious to a person having ordinary skill in the art. In *Plas-Pak Indus. V. Sulzer Mixpac AG*, 600 Fed. Appx 755 (Fed. Cir. 2015), concerning an IPR over a patent directed to a device and methods for mixing and dispensing multi-component paints, the court affirmed the Board's rejection of the petitioner's obviousness arguments. *Id.* at 760. As to one of the prior art references at issue in the opinion, Fukuta, the court agreed with the Board that the petitioner's proposed modification "fundamentally alters Fukuta's 'principle of operation'" and thus "is unlikely to motivate a person of ordinary skill to pursue a combination with that reference." *Id.* at 759. The court affirmed the Board's conclusion that the claims at issue would not have been obvious over Fukuta in view of a second reference. *Id.* In regard to the second reference at issue, Jacoben, which disclosed a device that dispenses fluid materials into a surface crack so as to minimize leakage, the court affirmed the Board's rejection of a combination that would have added a spray nozzle from another reference, Hunter, finding it was supported by substantial evidence. *Id.*

56

"[A]s the Board found, modifying Jacobsen to accommodate the spray nozzle of Hunter would render Jacobsen 'inoperable for its intended purpose,' and a person of ordinary skill would thus not have been motivated to pursue the combination. *In re Gordon*, 733 F.2d 900; *In re ICON Health & Fitness, Inc*., 496 F.3d 1374 (Fed. Cir. 2007). Accordingly, the Board did not err in concluding that [the claims at issue] would not have been obvious."

*Id*. at 760. These principles apply squarely to this case. The proposed modification of Redford to combine with Starbuck would render Redford inoperable for its intended purpose. Therefore one of skill would not have been motivated to pursue the combination. Plainly, the Board's rejection of the proposed Redford/Starbuck combination was supported by substantial evidence.

Moreover, even if Redford's flange were modified to be driven for cutting and generating a slug, Milwaukee never showed that the S-shaped slot would support the levering of a slug. As shown during the file history of the '554 and '555 patents, the limitation "for levering slugs" was added to fulcrum to require the fulcrum to support the levering force. Milwaukee, meanwhile, never provided evidence that the S-shaped channel of Redford was sufficient to support levering of a slug. Instead, Milwaukee relies on inherency—that it's necessarily true that the S-shaped channel is sufficiently strong to support a lever. But that is not the case.

For example, the Redford device is for light-duty cleaning of the recessed area around the nut. In fact, Redford discloses that its components may be made of plastic. Appx0680 (Ex. 1003 at 5:64-67), Appx0608-0609 (40:1-41:18). Redford contains no indication that its components are strong enough to support levering of a slug, inherently or otherwise. And "in order for a feature to be inherent in a reference, the missing descriptive matter must be necessarily present, and the fact that a certain thing may occur is not sufficient." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999). Because Redford's S-shaped channel is not necessarily strong enough to support levering a slug, Milwaukee has not adequately supported its inherency argument.

### 3.    Secondary considerations also support the Board's conclusions of nonobviousness

Objective indicia of nonobviousness also provides independent support for the challenged claims' patentability. *See Ortho-McNeil Pharma., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358 (Fed. Cir. 2008) (explaining that objective evidence of nonobviousness "is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness."). "Objective evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing

industry respect for the invention, and skepticism of skilled artisans before the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013). And consideration of these factors can, in particular, "protect against the prejudice of hindsight bias, which often overlooks that '[t]he genius of invention is often a combination of known elements which in hindsight seems preordained.'" *Id.* (quoting *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001)). Indeed, evidence of an invention's commercial success, copying by competitors, or unexpected results support a conclusion of nonobviousness even if a prima facie case of obviousness has been shown, when there is a nexus between that evidence and the merits of the claimed invention. S*ee In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077, 1079 (Fed. Cir. 2012).

Irwin's invention was the first hole saw design to provide a "staircase" slot for improved cutting and slug removal. Appx1217 (¶3). The invention led to unexpected results in regard to both faster cutting and a much greater reduction in down time for plug removal than expected. *Id.*

Irwin's commercial embodiment, the Lenox Speed Slot® marked a significant advancement over hole saws already on the market, and the Lenox Speed Slot® has achieved great commercial success. Appx1217 (¶3). The Speed Slot® grew Irwin's overall hole saw sales over 13% in the first year and has

enjoyed significant sales growth since then; sales of the Lenox Speed Slot® now exceed $25M annually. Appx1217-1218 ¶¶4-5. These sales represent a substantial quantity of the relevant market. *Id.* ¶4.

The nexus between the Lenox Speed Slot®'s commercial success and claims 6–13 of the '555 patent and claims 6–10 and 19 of the '554 patent is not a tenuous one. Claims 6–13 recite a hole cutter with an elongated slot having three fulcrums spaced opposite the cutting direction and which describe the staircase slot of the Lenox Speed Slot®. The very name of the product, Speed Slot®, reflects the impact of the invention, and Irwin has highlighted the patented improvements allowing significantly faster cutting and slug removal in marketing the product. Appx1218 (¶6). Now users demand faster slug removal, when before users had accepted slower slug removal as a necessary evil. Appx1218 (¶7). This commercial success is evidence that at least claims 6–10 and 19 of the '555 and '554 patents are not obvious over the prior art.

As noted, copying of the invention by a competitor provides another indication of an invention's non-obviousness, see supra, and Milwaukee has copied the inventions in the patents, Appx1219 (*Id.* at ¶8). Milwaukee is Irwin's principal competitor, and the record showed they are the only two companies selling hole saws with staircase slots in the United States. Appx1220 (¶11). Milwaukee has now given a trade name to its improved slot as well. Appx1219 (*Id.* ¶9).

Milwaukee's copying also indicates that the inventions are not obvious over the prior art.

<p style="text-align:center">* * *</p>

For all of the above reasons, the Board's conclusion that the claims are nonobvious over Redford in light of Starbuck should be affirmed.

## IV.    <u>CONCLUSION</u>

For at least the reasons stated above, Appellee Irwin requests that this Court sustain the findings of the Board as to all claims in the '554 and '555 patents.

Respectfully submitted,

/s/ *John W. Harbin*

John W. Harbin
Gregory J. Carlin
Mary Katherine Bates
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404)645-7707

***Attorneys for Appellee Irwin Industrial Tool Company***

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains **13958** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as counted by Microsoft Word 2013, the word processing software used to prepare this brief.

This brief complies with the typface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proporationally spaced typeface using Microsoft Word 2013 in Times New Roman 14-point font.

Date:  June 12, 2017          /s/ John W. Harbin
                              John W. Harbin
                              ***Attorney for Appellant***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on June 12, 2017, the foregoing

Corrected Brief of Patent Appellee Irwin Industrial Tool Company was filed

electronically using the CM/ECF system, and served via the CM/ECF system on all

counsel of record.


<u>/s/ John W. Harbin</u>
John W. Harbin