2017-1215, 2017-1216

# In the United States Court of Appeals for the Federal Circuit

Milwaukee Electric Tool Corp.,
Techtronic Industries Co. Ltd.,
Techtronic Industries North America, Inc., and
One World Technologies, Inc.,

*Appellants*,

v.

Irwin Industrial Tool Co.,

*Appellee*.

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board,
Case Nos. IPR2015-01461, IPR2015-01462

## APPELLANTS' REPLY BRIEF

J. Donald Best
Andrew T. Dufresne
MICHAEL BEST &
    FRIEDRICH LLP
1 S. Pinckney St., Suite 700
Madison, WI 53703

Kevin P. Moran
MICHAEL BEST &
    FRIEDRICH LLP
Two Riverwood Pl.
N19 W24133 Riverwood Dr.,
Suite 200
Waukesha, WI 53188

*Counsel for Appellants*

June 23, 2017

## CERTIFICATE OF INTEREST

Counsel for Appellants certifies the following:

| Full name of party represented by me: | Name of real party in interest represented by me: | Parent corporations and publicly held companies that own 10% or more of stock in the party: |
|---|---|---|
| Milwaukee Electric Tool Corp. | None | Techtronic Industries Co., Ltd. |
| Techtronic Industries Co., Ltd. | None | None |
| Techtronic Industries North America, Inc. | None | Techtronic Industries Co., Ltd. |
| One World Technologies, Inc. | None | Techtronic Industries Co., Ltd. |

The names of all law firms and the partners or associates for the party now represented by me in the agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

David Trautschold, Michael Best & Friedrich LLP.

Dated: June 23, 2017         /s/ J. Donald Best

J. Donald Best
MICHAEL BEST & FRIEDRICH LLP
1 S. Pinckney Street, Suite 700
Madison, WI 53703
(608) 257-3501

*Counsel for Appellants*

# TABLE OF CONTENTS

Page

Certificate of Interest ............................................. i

Table of Contents ................................................. ii

Table of Authorities .............................................. ivi

Table of Abbreviations and Conventions ............................. vi

Preliminary Statement.............................................1

Argument.........................................................1

A.   The Board did not construe the term "hole cutter" in its decisions, and doing so implicitly, as Irwin suggests, would constitute both procedural and substantive error..................................1

    1.   The Board did not provide adequate notice or explanation of a dispositive construction for the term "hole cutter." ......................2

    2.   MET made clear that the claims contained no drive structure requirement well before the oral hearing. ........................7

    3.   If the Board implicitly derived and relied on a limiting construction for "hole cutter," it did so using an incorrect claim construction analysis. ..........................8

    4.   The Board's presumed construction of "hole cutter" cannot be correct on the merits. ................................9

B.   Irwin disavows the Board's express finding that a single pin blocks two fulcrums in the Redford device because that finding lacks substantial evidence. ...................................12

C.   In upholding the claims challenged over Redford combined with Starbuck, the Board relied on Novak's testimony premised on an incorrect level of ordinary skill in the art. ....................14

    1.   The Board did not resolve the material factual dispute regarding the applicable level of skill in the art, and could not have done so reasonably by adopting Novak's standard. ...................15

    2.   The Board held that the claims were not proven unpatentable over Redford combined with Starbuck because Novak's opinions received controlling weight. ........................16

D.   The litany of fact-specific issues Irwin offers as "other reasons" for affirmance cannot be considered for the first time on appeal from an administrative decision. ...........................19

## TABLE OF CONTENTS (CONTINUED)

Page

1.    *Chenery* precludes the alternative grounds for affirmance
      and appellate fact finding that Irwin seeks. ...................................20

2.    Irwin's reliance on *Rexnord v. Kappos* is misplaced....................22

Conclusion ........................................................................................................24

Certificate of Service ........................................................................................255

Certificate of Compliance ................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple Inc. v. Sightsound Techs., LLC*,
  Nos. CBM2013-00020, CBM2013-00023 ........................................7

*Ariosa Diagnostics v. Verinata Health, Inc.*,
  805 F.3d 1359 (Fed. Cir. 2015) ...........................................22

*Burlington Truck Lines, Inc. v. United States*,
  371 U.S. 156 (1962)....................................................2, 13

*Datascope Corp. v. SMEC, Inc.*,
  879 F.2d 820 (Fed. Cir. 1989) ............................................23

*Dell Inc. v. Acceleron, LLC*,
  818 F.3d 1293 (Fed. Cir. 2016) .........................................3, 6

*Dickinson v. Zurko*,
  527 U.S. 150 (1999)......................................................16

*Glaxo, Inc. v. TorPharm, Inc.*,
  153 F.3d 1366 (Fed. Cir. 1998) ..........................................23

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966)........................................................15

*In re Aoyama*,
  656 F.3d 1293 (Fed. Cir. 2011) ..........................................21

*In re Applied Materials, Inc.*,
  692 F.3d 1289 (Fed. Cir. 2012) ..........................................20

*In re Cuozzo Speed Techs., LLC*,
  793 F.3d 1268 (Fed. Cir. 2015), *aff'd*, 136 S. Ct. 2131 (2016)............8

*In re Lee*,
  277 F.3d 1338 (Fed. Cir. 2002) .......................................20, 21

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
  821 F.3d 1359 (Fed. Cir. 2016) ...........................................5

*Jaffke v. Dunham*,
   352 U.S. 280 (1957)...................................................................23

*Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*,
   841 F.3d 1004 (Fed. Cir. 2016) ..........................................11

*PersonalWeb Techs., LLC v. Apple, Inc.*,
   848 F.3d 987 (Fed. Cir. 2017) ..............................................6

*Prolitec, Inc. v. ScentAir Techs., Inc.*,
   807 F.3d 1353 (Fed. Cir. 2015) ............................................8

*Rexnord Industries, LLC v. Kappos*,
   705 F.3d 1347 (Fed. Cir. 2013) ......................................22, 23

*Rovalma, S.A. v. Böhler-Edelstahl GmbH*,
   856 F.3d 1019 (Fed. Cir. 2017) .........................................3, 6

*SAS Inst., Inc. v. ComplementSoft, LLC*,
   825 F.3d 1341 (Fed. Cir. 2016) .........................................3, 6

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947)...............................................19, 20, 21, 23

*Secure Axxess, LLC v. PNC Bank Nat'l Ass'n*,
   No. 2016-1353, 2017 U.S. App. LEXIS 9991 (Fed. Cir. June 6,
   2017) (Plager, J., concurring) .............................................22

*Tempo Lighting, Inc. v. Tivoli, LLC*,
   742 F.3d 973 (Fed. Cir. 2014) ..............................................8

**STATUTES**

5 U.S.C. § 554(b)(3)....................................................................3, 6

**OTHER AUTHORITIES**

37 C.F.R. § 42.71(d) ...................................................................14

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Appx#### | joint appendix page #### |
| Board | Patent Trial and Appeal Board |
| IPR | *inter partes* review |
| Irwin | appellee Irwin Industrial Tool Co. |
| MET | appellants Milwaukee Electric Tool Corp.; Techtronic Industries Co. Ltd.; Techtronic Industries North America, Inc.; and One World Technologies, Inc. |
| Novak | Irwin's expert witness, and co-inventor of the '554 and '555 patents, Thomas Novak |
| Redford | U.S. Patent 7,237,291, "Combined Nut Recess Cleaner and Nut Driver Tool," filed August 23, 2004, and issued to Henry Redford on July 3, 2007 (Appx0674-0681) |
| Starbuck | U.S. Patent 2,473,077, "Trepanning Tool," filed July 6, 1946, and issued to Robert M. Starbuck, Jr., on June 14, 1949 (Appx0682-0683) |
| Vallee | Irwin's expert witness Glenn Vallee |
| '554 patent | U.S. Patent 8,579,554 (Appx0058-0070) |
| '555 patent | U.S. Patent 8,579,555 (Appx0071-0084) |
| '### patent, *xx:yy-zz* | column *xx*, lines *yy-zz* of the '### patent |

## PRELIMINARY STATEMENT

As MET explained in its opening brief, the Board's final written decisions rest on several errors. In particular, the Board relied on limitations absent from the claims to distinguish the prior art, relied on an unreasonably low level of ordinary skill in the art to make key findings, and misapprehended the position of the pin in the Redford device. Rather than defending the Board's conclusions on the merits, however, Irwin has responded by attempting to revise the Board's stated reasoning and re-frame the Board's conclusions in novel terms. In addition, Irwin offers a raft of proposed alternative grounds for affirmance to supplement the grounds for decision used by the Board. Irwin's approach speaks volumes and shows that not even Irwin believes the Board's decisions can be affirmed on their own terms. Those arguments should not be considered here, however, because the Board's decisions must be reviewed as decided, not as Irwin might prefer they had been decided.

## ARGUMENT

**A.    The Board did not construe the term "hole cutter" in its decisions, and doing so implicitly, as Irwin suggests, would constitute both procedural and substantive error.**

Irwin agrees that the Board's patentability decisions turned on whether or not the cited prior art disclosed drive structures. In attempting to reconcile the Board's analysis with the challenged patent claims' demonstrable lack of any drive structure requirement, Irwin presumes that the Board based its decision on an

1

unannounced, yet dispositive, construction of the preamble term "hole cutter" as used in the independent claims of the '554 and '555 patents.

As an initial matter, such a construction is nowhere to be found the Board's decisions, and the simplest and most likely reason is that the Board did not make such a construction. *See* Appx0008-0009; Appx0033-0035 (construing several terms not including "hole cutter"). Accordingly, Irwin's effort to legitimize the Board's decisions with a phantom construction should be disregarded. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (holding that "courts may not accept appellate counsel's *post hoc* rationalizations for agency action").

Even if Irwin has correctly divined the Board's true reasoning, reframing the issue as one of claim construction still would not rescue the judgment below because a decision made on that basis would mean then the Board did not provide sufficient notice or explanation of its grounds for decision, did not conduct a proper claim construction analysis, and reached a legally incorrect construction of the term at issue.

### 1.    The Board did not provide adequate notice or explanation of a dispositive construction for the term "hole cutter."

Irwin's primary argument for upholding the Board's decision is that the Board implicitly adopted an affirmative claim construction, based on "presumed" claim construction assertions in MET's petition. *See* Irwin Br. at 11, 26. In effect, Irwin suggests that the Board construed the term "hole cutter" without saying so,

2

relying on a position that MET took without saying so, and then rightly decided the case on that basis. The record reveals, however, that neither MET, nor Irwin, nor the Board ever advanced a construction for the term "hole cutter," and the Board's final written decision would violate the Administrative Procedure Act ("APA") if indeed founded on such a construction.

This Court reviews IPR decisions for compliance with the APA. *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1298 (Fed. Cir. 2016). Under the APA, an IPR petitioner is entitled to notice of the matters of fact and law asserted before the Board. *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1351 (Fed. Cir. 2016) (discussing 5 U.S.C. § 554(b)(3)). In addition, the APA requires the Board to "set forth a sufficiently detailed explanation of its determinations both to enable meaningful judicial review and to prevent judicial intrusion on agency authority." *Rovalma, S.A. v. Böhler-Edelstahl GmbH*, 856 F.3d 1019, 1024 (Fed. Cir. 2017).

Contrary to Irwin's argument, MET's petition did not construe "hole cutter" as a limiting preamble term that requires connection to a driving mechanism, and MET's patentability arguments were not founded on such a construction. MET's petitions proposed affirmative constructions for several claim terms, but "hole cutter" was not among them. Appx0093-0102 ('554 petition); Appx0150-0158 ('555 petition). Nor did MET's *prima facie* showings on anticipation or obviousness depend on identifying a drive structure in Redford—MET's petitions

3

compared Redford with each limitation of the independent claims using detailed claim charts. *See* Appx0103-0105 ('554 petition); Appx0159-0161 ('555 petition). Addressing the preambles of those claims reciting the "hole cutter" term, MET cited and relied upon Redford's express, direct disclosure that cleaning flange 60 is "essentially a hole saw." Appx0103 ('554 petition); Appx0159-0160 ('555 petition). Similarly, the '554 and '555 patents explain that hole cutters "include[] without limitation, hole saws." Appx0064 ('554 patent at 4:49-51); Appx0078 ('555 patent at 4:60-63); *see also* Appx0063 ('554 patent at 1:15-17) (using "hole cutter" and "hole saw" interchangeably). Given that straightforward alignment between Redford and the claims, MET did not request and did not need any construction of "hole cutter" to make its affirmative case on unpatentability.

The petition's subsequent comments about using the prior art cleaning flange as a "conventional hole saw" did not define the claim term "hole cutter." Rather, those comments provided context on the known state of the art, *i.e.*, what was "conventional." *See* Appx0106 ('554 petition); Appx0162-0163 ('555 petition); *see also* Appx0063-Appx0065 ('554 patent at 1:22-25; 4:66–5:3) (discussing drive structures as typical and known to those of ordinary skill in the art). Those comments laid a foundation for backup arguments that could be used if Irwin were to seek a restrictive construction of "hole cutter" later in the proceeding, and appeared alongside several other backup positions included in the petitions. *See*

4

Appx0106-0108; Appx0162-0164. The Board's IPR procedures create strong incentives for parties to incorporate backup positions into their petitions. In contrast to district court litigation, "where parties have greater freedom to revise and develop their arguments over time and in response to newly discovered material," IPR petitioners can be precluded from responding to a patent owner's later arguments with material not included or supported in the petition. *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016).

At no point did MET propose or rely on a construction of the term "hole cutter" in its petitions, nor was that term ever construed by either party or the Board at any other point during the IPR proceedings: (i) Irwin did not file a preliminary response in either IPR (Appx0197; Appx0218); (ii) the Board did not construe "hole cutter" when instituting trial (Appx0200-0203; Appx0222-0224); (iii) Irwin did not propose a construction during trial (Appx0273-0281; Appx0338-0347); and (iv) the Board did not construe the term in its final written decisions (Appx0008-0009; Appx0033-0035).

If, as Irwin contends, the Board nonetheless decided this case based on a construction of "hole cutter" that was never requested or issued at any point during trial—up to and even including the Board's final written decisions—that decision would violate the APA by failing to provide sufficient notice. In *SAS Institute*, for

example, this Court vacated the Board's decision because the Board had used a construction favorable to the patent owner for the first time in its final written decision. 825 F.3d at 1350-52. Similarly, the Board erred in another case by relying on arguments made for the first time at oral argument. *Dell*, 818 F.3d at 1300-01. If basing a decision on arguments first presented at oral argument or in a final written decision violates § 554(b)(3), then basing a judgment of patentability on a claim construction that remained unstated even in the final written decisions—as Irwin maintains occurred here—surely must fail procedural scrutiny as well.

In addition, if the Board indeed decided the patentability issues here based on an unstated claim construction holding, those decisions should be overturned for a second and independent procedural infirmity—failure to sufficiently explain the basis for the Board's decisions. To facilitate meaningful review, the Board's conclusions and reasoning should be clearly stated and identified, including the basis for any "implicit findings." *See Rovalma*, 856 F.3d at 1025. Here, if the Board made a dispositive conclusion on claim construction, its holding should have been clearly identified and explained as such so that it can be evaluated for compliance with governing principles of claim construction and adequate support in the record. While the amount of explanation needed can vary from case to case, *see PersonalWeb Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 991-93 (Fed. Cir. 2017),

here the Board did not explain or even identify the claim interpretation that Irwin

contends formed the basis for the Board's decision.

### 2.   MET made clear that the claims contained no drive structure requirement well before the oral hearing.

Irwin contends that MET did not argue that the claims lack a drive structure

limitation until oral argument before the Board. Irwin Br. at 14-16. The record,

however, readily belies that assertion.

As described above, MET made out its *prima facie* invalidity case in the

petitions without referencing or relying on a prior art drive structure to satisfy any

limitation of the independent claims. *See* Appx0103-0105 ('554 petition);

Appx0159-0161 ('555 petition). Furthermore, MET affirmatively argued in the

petitioner's reply—in response to Irwin's attempts in the patent owner's response

to distinguish the prior art on limitations absent from the claims—that the

challenged claims do not require connection with power tools or other drive

structures. Appx0404 ("[N]o claim of the '554 patent requires the use of power

tools or any other drive mechanism."); Appx0438 (same); Appx0413 ("Again, no

claim in the '554 patent requires an arbor or any other particular drive structure.");

Appx0447 (same).

Moreover, Irwin could have sought leave to file a sur-reply before the Board

if it believed MET raised those arguments too late. *See, e.g.*, *Apple Inc. v.*

*Sightsound Techs., LLC*, Nos. CBM2013-00020, CBM2013-00023, Paper No. 96,

at 2-3 (PTAB May 15, 2014) (granting patent owner leave to file sur-reply in response to new arguments raised by the petitioner's reply). Irwin, however, chose not to do so. *See* Appx0055; Appx0057.

In short, both the record and Irwin's actions demonstrate that MET's positions regarding what the challenged claims require and what the prior art discloses were timely presented to Irwin, and to the Board, in this proceeding.

### 3. If the Board implicitly derived and relied on a limiting construction for "hole cutter," it did so using an incorrect claim construction analysis.

Procedural defects aside, if Irwin is correct that the Board reached its decision by "presuming a limiting construction on the 'hole cutter' preamble of the challenged claims," Irwin Br. 11, the Board did so using a legally erroneous approach to claim construction to reach a result at odds with the intrinsic record.

In proceedings before the Board, claims must be construed according to their broadest reasonable interpretation. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279 (Fed. Cir. 2015), *aff'd*, 136 S. Ct. 2131 (2016). The broadest reasonable interpretation standard gives primacy to the intrinsic record—the language of the claims, the specification, and the prosecution history. *Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014). Extrinsic evidence, on the other hand, "has relatively little probative value in view of the prevailing intrinsic evidence" and may not overcome conflicting intrinsic evidence. *Id.*; *see also Prolitec, Inc. v. ScentAir Techs., Inc.*, 807 F.3d 1353, 1358 (Fed. Cir. 2015)

8

(holding that extrinsic evidence "cannot rewrite the intrinsic record of the [patent] to narrow the scope of the patent and the claim element").

Here, the Board's entire rationale for requiring drive structures for Redford's cleaning flange to qualify as a prior art "hole cutter" turned not on any aspect of the intrinsic record associated with the '554 and '555 patents, but rather on the Board's interpretation of MET's IPR petitions. *See* Appx0010-0011 (Final Written Decision, '554 patent); Appx0035-0036 (Final Written Decision, '555 patent). The Board's discussion lacks any analysis of the intrinsic record—the claim language, the specification, or the prosecution history—to inform the scope and meaning of "hole cutter" as used in the claims of the '554 and '555 patents. In short, if Irwin's position is to be believed, the Board reached an unspoken and case-dispositive construction of "hole cutter" founded entirely on the extrinsic statements of a third party made years after the patents issued. Such a misdirected approach would be legally untenable, could not be expected to reach the correct result, and predictably failed to do so in this case.

### 4. The Board's presumed construction of "hole cutter" cannot be correct on the merits.

Irwin's brief makes little effort to defend the Board's presumed construction on the merits in view of the intrinsic record, likely because that construction contradicts the relevant intrinsic evidence. At most, Irwin offers faint praise for the Board's substantive construction as being "consistent with accepted claim

9

construction principles." Irwin Br. at 13. Irwin also briefly accuses MET of "cherry picking" phrases from the '554 and '555 patents' specifications but does not identify any relevant disclosures that MET failed to mention. *Id.* at 14.

If MET was "cherry picking" from the intrinsic evidence, the intrinsic cherries are few, MET picked them all, and they all weigh against construing the claims to require a drive structure. The specifications of the '554 or '555 patents devote minimal discussion to drive structures. The available disclosures, however, present drive structures as optional features for purposes of the hole cutters of the '554 and '555 patents. Both patents define "hole cutter" broadly, without reference to a drive structure of any sort: "The term 'hole cutter' is used here to mean a tool that cuts holes in work pieces, such as wood or metal work pieces, and includes without limitation hole saws." Appx0064 ('554 patent at 4:49-51; Appx0078 ('555 patent at 4:60-63). In addition, the patents' limited disclosures relating specifically to drive structures are permissive, stating that the disclosed hole cutters "may include" structures for connecting a driver (Appx0064-0065 ('554 patent at 4:64–5:3); Appx0079 ('555 patent at 5:10-14)) or "typically" include such structures (Appx0063 ('554 patent at 1:22-25); Appx0077 ('555 patent at 1:26-29)). And the subset of disclosed embodiments that do include a drive structure, such as in Fig. 2 of each patent, are expressly identified as illustrative rather than limiting. Appx0068 ('554 patent at 32-34); Appx0082 ('555 patent at 12:65-67).

Thus, the patents' express definition of "hole cutter" is broad and lacks any drive structure limitation. Indeed, the disclosures relating to drive structures are permissive—*i.e.*, if a hole cutter in the '554 and '555 patents "may include" a drive structure, it just as easily may not.

Again, Irwin declines to engage in any substantive discussion regarding the intrinsic evidence and instead retreats back to the petitions, denigrating the relevant intrinsic evidence from the '554 and '555 patents as "inconsistent" with extrinsic statements gleaned from the petitions. Irwin Br. at 14. That very inconsistency, however, confirms error in the Board's presumed construction, for where extrinsic and intrinsic evidence conflict, it is the extrinsic evidence that must yield, not vice versa. *See Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1012-13 (Fed. Cir. 2016) (rejecting the Board's construction premised on extrinsic evidence in conflict with the intrinsic record). The Board's presumed construction of "hole cutter" as requiring a drive structure does not survive scrutiny in light of the controlling intrinsic record.

*    *    *

The Board erred in its patentability analysis, whether the issue is framed in terms of an unspoken and erroneous claim construction or an error in requiring the prior art to disclose a limitation absent from the claims. Simply put, the challenged

claims do not recite, and cannot be construed to require, a drive structure, and the Board erred by distinguishing Redford on that ground.

### B.    Irwin disavows the Board's express finding that a single pin blocks two fulcrums in the Redford device because that finding lacks substantial evidence.

In another effort to distance itself from the Board's actual grounds for decision, Irwin attempts to rewrite the Board's findings, or suggest what the Board *meant* to say, when the Board found that Redford's single pin 54 would block two separate fulcrum positions. *See* Irwin Br. at 17-23. Identifying what Irwin wishes the Board had said, however, does not change the substance of what the Board did say, and Irwin fails to identify any support for the Board's expressly stated conclusions.

As MET pointed out in its opening brief, the Board made a factual finding that Redford's *single* pin 54, if present, would prevent *both* upper depression 53 and lower depression 55 from acting as fulcrum points in Redford. *See* Appx 0013-0014; Appx0018; Appx0038-0040; Appx0043. There is no substantial evidence to support that finding. The record, and fundamental logic, tells us that a single pin can only exist in one place at a time.

Rather than defend the Board's conclusion on its merits, Irwin presents a lengthy discussion of a completely different factual argument drawn from its patent owner's response, in which Irwin posited that Redford's pin 54 would block one fulcrum and a separate structure, Redford's body 20, would block a second. Irwin

Br. at 18-23 (describing arguments "discussed in Irwin's Patent Owner Response"). In so doing, Irwin purports to identify substantial record evidence supporting the particular conclusions Irwin proposed in the patent owner's response regarding the pin and body but does not address the conclusions the Board actually made in the final written decisions regarding the pin alone. *Compare* Irwin Br. at 18, 20-22 (citing testimony of Irwin's expert, Mr. Novak regarding the pin and body), *with* Appx 0013-0014; Appx0018; Appx0038-0040; Appx0043 (discussing the pin alone). Irwin thus fails to identify substantial evidence—or cite any evidence at all—to support the Board's expressly stated findings.

At most, Irwin allows that the Board's decisions "could have been clearer in describing how the fulcrum limitations are not met when the body 20 and pin 54 are used as the drive mechanism." Irwin Br. at 22. But there was no lack of clarity; the Board's decisions were crystal clear in finding and repeatedly explaining that "pin 54 prevents upper depression 53 and lower depression [55] from satisfying" the recited fulcrum limitations. Appx0014; Appx0039; *see also* Appx0018; Appx0043. The Board's stated findings made no mention of the body 20 interfering with a fulcrum, and Irwin's pursuit of a contrary theory in its trial briefing does not trump the Board's reasoning as stated in its decisions. *See Burlington Truck*, 371 U.S. at 168. Furthermore, if Irwin had believed that the Board was unclear or misspoke in the final written decisions, Irwin could have

13

requested rehearing or clarification from the Board on that point. *See* 37 C.F.R. § 42.71(d). Irwin, however, filed no such request.

Accordingly, the Board's stated conclusion that the single Redford pin would block two separate fulcrums in the Redford device finds no support in the record, and no reasonable mind could accept the evidence Irwin has identified—which pertains to a different theory addressed only in its own trial briefing—to support the Board's distinct and unambiguous conclusion.

**C.    In upholding the claims challenged over Redford combined with Starbuck, the Board relied on Novak's testimony premised on an incorrect level of ordinary skill in the art.**

Regarding the level of ordinary skill in the art, Irwin again tries to discern unstated reasoning and read novel conclusions into the Board's decisions to compensate for the Board's faulty approach. Irwin appears to assert that, although its conclusion was not shared with the public or the parties, the Board did define the applicable level of ordinary skill in the art and selected Novak's outlier standard. *See* Irwin Br. at 36-38. Irwin also argues that the Board did not rely, and did not need to rely, on Novak's testimony to decide the disputed patentability issues over the combination of Redford and Starbuck. *See id.* at 30-36. Those contentions are incorrect.

14

**1.    The Board did not resolve the material factual dispute regarding the applicable level of skill in the art, and could not have done so reasonably by adopting Novak's standard.**

Irwin argues that the "Board's failure to expressly state the level of skill in the art does not mean that the Board did not resolve the level of skill," and Irwin appears to agree that if the Board did define the level of ordinary skill in the art— as it was required to do under *Graham v. John Deere Co.*, 383 U.S. 1 (1966)—the Novak standard was applied. *See* Irwin Br. at 36. Irwin further asserts that substantial evidence would support that choice.

To support its premise, Irwin discusses not what Novak identified as the level of ordinary skill, but rather how he approached the question, arguing only that the factors Novak considered "are entirely consistent with factors deemed relevant by this Court." Irwin Br. at 37. But Irwin's analysis focuses on process to the exclusion of substance—Irwin does not defend the substantive viability of the unreasonably low standard of ordinary skill that Novak derived and used to form his opinions. In other words, using the right factors does not guarantee the right result or insulate Novak's conclusion from substantive scrutiny. Otherwise, for example, review of obviousness decisions would end at checking for correct recitation of the *Graham* factors, with no assessment of subsequent findings under each factor or the ultimate conclusion of obviousness.

In this case, Novak's *conclusion* as to the applicable level of ordinary skill cannot withstand review, regardless of the process he used to get there. Substantial

15

evidence review is not simply an exercise in "rubber-stamping agency fact-finding." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999). Rather, the APA requires meaningful review, and Novak's level of ordinary skill cannot be considered reasonable in view of the evidence in this case. As MET has noted, Novak adopted a level of ordinary skill drastically lower than those identified by the other experts for both parties, and by broadly including anyone "having a bachelor's degree in engineering," Appx1147, Novak's standard would have encompassed individuals trained in a wide array of engineering disciplines with little or no relevance to the technology at issue. A reasonable fact finder could not accept Novak's anomalous conclusion as reasonable in light of the particular technology and irreconcilable testimony apparent from all other experts in the record.

### 2. The Board held that the claims were not proven unpatentable over Redford combined with Starbuck because Novak's opinions received controlling weight.

Recognizing the problems associated with Novak's standard of ordinary skill, Irwin also seeks to characterize the Board's decisions being made without the aid of Novak's testimony, dismissing the Board's repeated evidentiary citations as "passing references to Mr. Novak" Irwin Br. at 30-36. In each case, however, the record reveals that the Board reached its findings by explicitly relying on Novak's tainted opinions.

First, according to Irwin, the Board found that a person of ordinary skill in the art would not have been motivated to combine Redford and Starbuck because

16

MET did not carry its burden on that point, independent of any role for Novak's testimony. Irwin Br. at 30-33. In its decisions, however, the Board's rationale for rejecting the combination of Redford with Starbuck was its finding that one of ordinary skill in the art would not have viewed Redford as directed to a hole cutter sufficiently similar to Starbuck to merit consideration. Appx0019-0021; Appx0044-0046. The Board's conclusion thus turned on how one of ordinary skill would have viewed Redford. Because the relative knowledge and understanding associated with the applicable standard of ordinary skill lay at the heart of that inquiry, the Board began its analysis by invoking that perspective. Appx0019; Appx0045 ("Redford and Starbuck are to be viewed as they would have been viewed by one of ordinary skill.").

The final written decisions demonstrate that Novak's opinions—discussing how a person without relevant training or experience would have viewed Redford—served to guide the Board's analysis. Although the Board also cited portions of Redford, Redford's disclosures cannot themselves answer how they would have been viewed by one of ordinary skill in the art. *See* Appx0020; Appx0045 (citing Redford). The Board also referenced a statement by Vallee, Irwin's other expert, but the quoted statement focused narrowly on one passage from Redford to the exclusion of other parts of the disclosure and did not reference the person of ordinary skill; Vallee thus did not express a full appreciation of what

Redford would have suggested to one of ordinary skill in the art. *See* Appx0020-0021; Appx0046 (quoting Vallee). The Board's only evidentiary citations expressly referencing how *a person of ordinary skill in the art* would have viewed Redford pointed to testimony from Novak, which were in turn premised on Novak's faulty standard of ordinary skill. *See* Appx0020; Appx0045-0046 (quoting Novak). Thus, the Board reached its conclusion that a person of ordinary skill in the art would not have combined Redford and Starbuck relying on Novak's testimony, and thus relying on Novak's impermissibly low standard of ordinary skill in the art.

Second, Irwin argues that the Board found that a person of ordinary skill in the art would not have been motivated to combine Redford and Starbuck in a manner that would have retained a third fulcrum[1] because MET allegedly did not carry its burden on that point, even apart from Novak's testimony. Irwin Br. at 33-36.

In the final written decisions, the Board found that only hindsight would have led to retaining the third fulcrum disclosed in Redford when combining Redford and Starbuck. Appx0022; Appx0047-0048. Contrary to Irwin's contentions, the Board again relied on Novak's testimony to reach that conclusion.

---

[1]    The question of a third fulcrum in the Redford/Starbuck combination matters only for the subset of challenged claims that both recite a third fulcrum and were instituted solely under the combination of Redford and Starbuck (Ground 3): claims 6-13, 21, 29, and 35 of the '554 patent and claims 10 and 11 of the '555 patent.

The Board considered testimony from MET's expert explaining why it would have been obvious to preserve Redford's third fulcrum but instead chose to "credit the testimony of Patent Owner's expert, Mr. Novak" describing the perspective of one of ordinary skill in the art to support the Board's hindsight analysis. Here too, the Board's analysis of the third fulcrum in the Redford/Starbuck combination relied expressly on Novak's testimony regarding how a person of ordinary skill in the art—with Novak's low level of ordinary skill—would have understood and combined the prior art.

**D.     The litany of fact-specific issues Irwin offers as "other reasons" for affirmance cannot be considered for the first time on appeal from an administrative decision.**

Finally, Irwin dispenses with defending the Board's decision on its terms, asserting instead that even if the Board was wrong on the merits, the judgment of patentability "should be affirmed for other reasons" never addressed below. Irwin Br. at 40; *see also id.* at 1-2 (invoking a "right for any reason doctrine"). Such arguments consume more than a third of Irwin's brief. *See id.* at 40-61. Irwin's salvage efforts, however, run afoul of the *Chenery* doctrine, which confines this Court's review of agency decisions to the actual grounds relied upon by the agency. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Standard administrative law principles apply to the Board as an agency tribunal, including *Chenery* and its limits on appellate review. Under *Chenery*, if an agency's stated grounds for decision "are inadequate or improper, the court is

powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. 332 U.S. at 196. Therefore, as this Court has recognized, the "Board's judgment must be reviewed on the grounds upon which the Board actually relied." *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012). Unlike appeals from a district court judgment, alternative grounds for affirmance of a Board decision should not be considered. *In re Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002).

### 1. *Chenery* precludes the alternative grounds for affirmance and appellate fact finding that Irwin seeks.

Irwin proposes numerous alternative grounds for affirmance, in varying levels of detail, regarding the instituted grounds of anticipation and obviousness over Redford or Redford and Starbuck. Irwin Br. at 40-61. For example, Irwin alleges that Redford does not disclose whether the Redford device can be used to cut a hole (*id.* at 41-42); whether the Redford device would have sufficient "strength and rigidity" to support undefined levering forces (*id.* at 42-46, 57-58); whether the channel in the Redford device could receive a lever (*id.* at 46-47); whether a user of the Redford device would use a lever or nut driver to remove substrate material from the cleaning flange body (*id.* at 51); or whether the channel in the Redford device would collect wood cuttings during use (*id.* at 53-54).

As a group, Irwin's arguments all reiterate various fact-based theories aimed at distinguishing the challenged claims from the prior art, and most of which suffer

from at least the same deficiency as Irwin's drive structure arguments—they have no basis in the language of the challenged claims. But even more importantly at this stage in the proceedings, the Board did not decide or rely on any of those issues in rendering its decisions, as Irwin acknowledges. *See, e.g.*, Irwin Br. at 48 (discussing "reasons the Board did not explicate in its decision"). Accordingly, *Chenery* prohibits considering Irwin's proposed alternative grounds for affirmance on appeal in the first instance. *See Lee*, 277 F.3d at 1346 (declining to consider alternative grounds for affirmance proposed on appeal from the Board).

Moreover, Irwin's "other reasons" for affirmance all hinge on factual issues that the Board left unresolved in its final written decisions. As here, *Chenery*'s proscription against using alternative grounds to affirm agency decisions applies with particular force in cases where doing so would "depend upon making a determination of fact not previously made by the agency." *In re Aoyama*, 656 F.3d 1293, 1299 (Fed. Cir. 2011).

Such appellate fact finding would be required for each of the alternative grounds Irwin proposes. For example, the Board did not address how strong or rigid the Redford cleaning flange would be or how much force would be needed for levering slugs. *See* Irwin Br. at 42-46, 57-58. Similarly, the Board did not rule on whether the Redford aperture would impede removal of cuttings, *id.* at 54, or whether Irwin provided bona fide evidence of secondary considerations with a

21

nexus to the claims, *id.* at 58-61. The unresolved factual issues underlying each of Irwin's proposed alternative grounds cannot be decided on appeal, for they represent "factual and discretionary determinations that are for the agency to make." *See Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365-66 (Fed. Cir. 2015) (remanding for the Board to resolve a fact issue raised on appeal).

## 2.     Irwin's reliance on *Rexnord v. Kappos* is misplaced.

Irwin cites *Rexnord Industries, LLC v. Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013), as supporting affirmance based on issues never addressed by the Board. *See* Irwin Br. at 40-41, 47-48. *Rexnord* mentions the oft-noted principle that an appellee may be permitted to defend a judgment on any ground supported by the record on appeal. 705 F.3d at 1356. But Irwin's reliance on that principle as a blanket rule fails to account for a pivotal difference between an appeal from an appeal from a district court and an appeal from an administrative agency:

> When an appeal is from the judgment of a district court, it is the judgment, not the trial court's opinion, that is on appeal; the appellate court can affirm on any ground the record supports. By contrast, when the appeal is from an administrative agency—and the Board is such an agency—the appellate court can only review the record on appeal and the decision of the agency in light of that record. . . . It is what the agency said it decided that is the subject of the appeal.

*Secure Axxess, LLC v. PNC Bank Nat'l Ass'n*, No. 2016-1353, 2017 U.S. App. LEXIS 9991, at *18-19 (Fed. Cir. June 6, 2017) (Plager, J., concurring).

In *Rexnord*, the Court's allusion to arguments available to an appellee served only to highlight, in a discussion of waiver, one party's status as appellee *before the Board*. *See Rexnord*, 705 F.3d at 1355-56. On the obviousness question actually at issue in that case, the Court did not consider or affirm on alternative grounds—or even affirm at all. *Id.* In addition, the decisions cited in *Rexnord* (and in Irwin's brief) as supporting the propriety of affirmance on alternative grounds all concerned appeals from district court, not agency, decisions. *See Jaffke v. Dunham*, 352 U.S. 280, 281 (1957) ("A successful party *in the District Court* may sustain its judgment on any ground that finds support in the record.") (emphasis added); *Glaxo, Inc. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998) (stating that "an appellate court may affirm a judgment of *a district court* on any ground the law and the record will support") (emphasis added); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820 (Fed. Cir. 1989) (appeal from a federal district court).

In summary, *Rexnord* did not question or countermand the longstanding *Chenery* doctrine, which circumscribes appellate review of agency decisions, and does not support Irwin's request for impermissible inquiry into the record and for findings and findings of fact beyond the Board's stated decisional grounds in this case. Accordingly, this Court should not consider Irwin's proposed alternative grounds for affirmance for the first time in this appeal.

## CONCLUSION

In view of the foregoing, MET submits that this Court should reverse, or at least vacate, the Board's erroneous rulings upholding the patentability of the challenged claims.

Respectfully submitted,

Dated: June 23, 2017

/s/ J. Donald Best

J. Donald Best
Andrew T. Dufresne
MICHAEL BEST & FRIEDRICH LLP
1 S. Pinckney Street, Suite 700
Madison, WI 53703
(608) 257-3501
jdbest@michealbest.com
atdufresne@michaelbest.com

Kevin P. Moran
MICHAEL BEST & FRIEDRICH LLP
Two Riverwood Pl.
N19 W24133 Riverwood Drive,
Suite 200
Waukesha, WI 53188
(262) 956-6560
kpmoran@michaelbest.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF System on the date specified below, which constitutes service of such filing by electronic means on all counsel of record.

Dated: June 23, 2017                    /s/ J. Donald Best
                                        J. Donald Best
                                        MICHAEL BEST & FRIEDRICH LLP
                                        1 S. Pinckney Street, Suite 700
                                        Madison, WI 53703
                                        (608) 257-3501

                                        *Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1. This Brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 5,799 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rules of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word in 14 point Times New Roman font.


Dated: June 23, 2017            /s/ J. Donald Best
_____
J. Donald Best
MICHAEL BEST & FRIEDRICH LLP
1 S. Pinckney Street, Suite 700
Madison, WI 53703
(608) 257-3501

*Counsel for Appellants*